# PATRICK KINNEY v. AUSTIN CORBIN ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF MONTGOMERY COUNTY.

Argued February 6, 1890—Decided February 17, 1890.

A railroad laborer, injured by the breaking of a chain which the foreman of the gang required them to use when he knew it was defective, cannot recover therefor from the railroad company, the negligence being that of the foreman, the fellow-servant of the plaintiff.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 153 July Term 1889, Sup. Ct.; court below, No 52 December Term 1887, C. P.

On November 5, 1887, Patrick Kinney brought trespass against Austin Corbin, George DeB. Keim and Stephen A. Caldwell, receivers of the Philadelphia & Reading Railroad Co., to recover damages for injuries received by the plaintiff while engaged in the service of the defendant company. Issue.

At the trial on December 17, 1888, before WEAND, J., at the close of the testimony showing the facts sufficiently appearing

in the opinion of the court below, infra, the court, on motion of the defendants, entered judgment of nonsuit, with leave, etc.

A rule to show cause why the judgment of nonsuit should not be vacated having been argued, the following opinion was filed, WEAND, J.:

The material facts in this case upon which plaintiff bases his right to recover are as follows:

Plaintiff was one of a gang of men in the employ of the defendant company as repairmen, who were engaged in removing stone from the side of the railroad. The machinery in use was a derrick, windlass and chains. A chain was first passed around the stone and to this another chain attached to the derrick was hooked; by means of a windlass the stone was hoisted on to a car on the siding. At the time of the accident four men were at the windlass and four on the car to regulate the movement of the stone when lowered. Plaintiff had hold of the guy rope to swing the stone over the car. McLean, one of the hands, when fastening the chain around the stone, noticed that one of the links was cracked and he told Missimer, the boss, " that the chain was condemned (meaning as afterwards explained, not fit to carry the stone), and was not fit to carry the stone." Missimer made answer that " it was all right, it would carry it." The chain or link was not shown to Missimer, nor did he come to look at it. It does not appear affirmatively that plaintiff heard this conversation, although he was close to Missimer.

When the stone was about a foot above the car, some of the men called to Missimer, in hearing of plaintiff, that they were likely to get killed. They did not know of the defective link. He said, " Go on; there is no danger, raise up the stone." He then told plaintiff, who was some distance from the hanging stone, to get some small stones and place them in the cars, so that the large stone might rest on them when lowered, and allow the chain to be removed. Plaintiff obtained the stones, but instead of approaching the car from either end or opposite side of the car, all places of safety, he did so from the side where the stone was hanging, and passed so close to, if not directly under it, as to be crushed by it when it fell. A link in the chain had broken. The chain with two others, had been in use by the same men and for the same purpose for three or four days at least,

and had been seen by plaintiff. McLean testified that the chain was rusty and pretty well worn out. Under these facts the plaintiff was nonsuited.

It was the duty of the plaintiff to show negligence on the part of the defendants, and he attempted to do so by the fact that a defective chain was used and that this caused the accident. That it is the duty of every employer to exercise reasonable care in providing his laborers with safe machinery, suitable tools and appliances, adapted to the uses for which they are designed, is undoubtedly law, but the rule has its reasonable limitations. It is manifestly impossible that a railroad company can at all times know of the condition of every tool, chain, instrument or appliance used, and when these are placed in good condition, or with no patent defect, in the hands of those who are to use and have charge of them, it would seem reasonable to hold that the company had fulfilled its obligations in this regard, and not be liable for an injury resulting from their breaking or failure, unless it is shown that the corporation has been guilty of negligence in regard thereto: Groff v. Railroad Co., 76 N. Y. 125. The master having provided his servant with safe tools, it is now the duty of the latter who has them in use, to observe their condition, and if defective to report the fact to his superior. Having them under his control, he is better able to observe their condition than is the master. If defects exist and are not observed by those who have them in daily use, how can the master be better able to know of any defects existing, and if the servant uses them without objection, the master has a right to assume that no cause of complaint exists.

We are now speaking of those articles with which the employee is brought in actual contact when in use, and where by handling them he must necessarily see and know of their condition. When a master provides his servant with an axe, or a pick, to be used in the latter's ordinary business or employment, there would arise no duty on the part of the employer to inspect them, unless after complaint made. To allow a servant to handle and use a chain for days, weeks or months, and then hold a master responsible for accidents resulting from wear and tear or breaking, would be harsh law. That such articles will in time wear out or break is evident, but who is better able to judge of their condition than those who have them in daily use? To hold

Opinion of Court below.

otherwise would be to offer a premium for carelessness; for the servant, by mere inattention to his duty, might allow his tools to become unfit for use and then visit the consequences upon his employers. A different rule would prevail with reference to machinery or perishable articles, which experience teaches us require regular inspection, and which are ordinarily presumed to demand repairs or attention.

In this case, it nowhere appears how long this chain had been previously in use, nor its condition when first provided, nor that the company or employees had any knowledge of its defective condition until the morning of the accident. It had been in use for four or five days by the same men engaged in the same work and had been seen by plaintiff. It was one of three chains provided by the company, and it was neither necessary nor obligatory upon the men to use this particular one, especially when its defective condition became known. No complaint is made as to the competency of Missimer, the boss. As it does not appear, therefore, that the chain was originally defective, or that it had been so long in use as to render the duty of inspection necessary, or that the company had due notice of the defect, there would arise no presumption of negligence on the part of the defendants. These men were employed in the same character of work, with the same appliances, for four days, using and handling the same tools, showing that with ordinary care no danger was to be apprehended. Although ten or twelve men were employed about the work, but one noticed any defect in the chain, which is in itself evidence that it was not such an apparent defect as to place them or their employers on guard. We think the rule laid down in Baker v. Railroad Co., 95 Pa. 211, affirming Ryan v. Railroad Co., 23 Pa. 384, applies to this case.

The duty which the master owes to his servants is to provide them with safe tools and machinery. When he does this, he does not, however, engage that they will always continue in the same condition. Any defect which may become apparent in their use, it is the duty of the servant to observe and report to his employer. The servant has the means of discovering any such defect, which the master does not possess. It is not negligence in the master, if the tool or machine breaks either from an internal original fault not apparent when the

tool or machine was at first provided, or from an external apparent one produced by time and use, not brought to the master's knowledge. A different rule, however, prevails where the tool or machinery is perishable. As there was no evidence upon which the jury could pass as to the perishable condition of the chain, there was nothing to submit to them, the presumption being that it was in good condition, and the burden of showing that by original construction or long use it had become defective, resting on the plaintiff.

It is also apparent that this accident was caused by the unusual and severe strain to which it was subjected. The weight of the stone was estimated by plaintiff to be twelve tons, while others stated it to be from fifteen hundred pounds to three or four tons. That this unusual weight was the proximate cause of the crack, is evident from the fact that the men who knew nothing of the condition of the chain were yet alarmed for their safety, and called to the boss that they would be killed. If this is so, the company was not in default, and the negligence, if any, was that of a co-employee. McLean, who fastened the chain, was a servant of that character, and so we think was Missimer, although termed a boss.

In no part of the testimony does it appear that he was anything more than a foreman, or person in charge of a gang of men doing a particular kind of work, and a co-employee with plaintiff. If he was, plaintiff cannot recover under numerous authorities not necessary to be cited.

The last ruling upon this subject is found in the case of Lewis v. Seifert, 116 Pa. 628. One who enters upon the service of another takes on himself all the ordinary risks of the employment, and the negligent acts of fellow-workmen in the general course of the employment are within those ordinary risks. To constitute fellow-servants within the rule, employees need not be at the same time engaged in the same particular work, provided they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purpose; and this, though one injured, may be inferior in grade and subject to the direction and control of a superior, whose act has caused the injury. It is only where the master or superior places the entire charge of the business, or a distinct branch of it, in the

hand of an agent or subordinate, exercising no discretion or oversight of his own, that the master is held liable for the negligence of such agent or subordinate: Mullan v. Steamship Co., 78 Pa. 25. The latter must have a general power and control over the business, not a mere authority to superintend a certain class of work, or a certain gang of men, in order to make the master liable: N. Y. etc. R. Co. v. Bell, 112 Pa. 400.

There was nothing in the case on trial to take it out of the direct ruling of the case last cited. It would have been useless to submit to the jury the question as to Missimer's power and authority, for there was no evidence bearing upon it.

In Johnson v. Tow Boat Co., 135 Mass. 209, a case which thoroughly covers every point in dispute here, the court held that "if a servant is injured by the breaking of a rope used in hoisting goods, in consequence of the neglect of a fellow-servant, who knew of the defective condition of the rope, to supply a new one in accordance with a duty which the master has imposed upon him, the question whether the fellow-servant acted as a fellow-servant merely, or as a representative of the master, is a question of law and not of fact."

A corporation owning a lighter is bound to use reasonable care in maintaining in suitable condition its appliances used on board the lighter by its servants in hoisting and lowering merchandise; but if it furnishes such appliances, and employs a competent servant to see that they are kept in proper condition, it is liable for an injury occasioned to one servant by the parting of a rope, in consequence of its being used for too long a time, and after its defective condition was known to the servant whose duty it was to replace it. In the case on trial, a sufficient number of chains were provided, and, as there was no necessity for using the defective ones, these principles are directly applicable.

In Mullan v. Steamship Co., supra, the character in which the stevedore acted was a question of fact to be decided by the jury, as explained by Justice PAXSON in Del. & H. Canal Co. v. Carroll, 89 Pa. 374; and in Lewis v. Seifert, the train dispatcher was held as a matter of law not to be a co-employee. That a laborer and foreman, engaged as those parties were, are co-employees, is decided in N. Y. etc. R. Co. v. Bell, 112 Pa. 400; Brick v. Railroad Co., 98 N. Y. 211; Hoffnogle v.

Railroad, 55 N. Y. 608; Keystone Bridge Co. v. Newberry, 96 Pa. 246; Zeigler v. Day, 123 Mass., 152, and numerous other cases. From these principles and decisions bearing upon them, we think that the plaintiff could not recover and that a non-suit upon this point alone was proper.

It can also be sustained upon the ground of contributory negligence on the part of the plaintiff. At the time the stone was being raised, the men engaged in the work called to the boss that they were likely to get killed. At this time plaintiff was in a safe place, and had his attention thus called to the danger. When told to get a stone and place it on the car, instead of doing so by approaching the car at the back or side, where he would have been out of danger, he goes out of his way to approach it from the front, and thus brought himself under the stone which at once fell on him. Beside the direct warning from the men of the danger, his own senses should have warned him of the folly of his act. The size of the stone alone would have been sufficient, but in addition, he had knowledge of the fears of his fellow-workmen which were no doubt aroused by the weakness of the chain and the unusual size of the stone. When others in safe places were thus alarmed, he deliberately placed himself in a place of known danger. The words of Missimer, " go ahead, raise the stone," were not addressed to him, and no order or direction that he received required him to go where he did. It was his own folly that caused him to be hurt, and he ought not to visit the defendants with its consequences. It was the duty of the court to declare this negligence per se. That he was warned, appears from his own testimony, and it would have been our duty to say to the jury that under such circumstances there could be no recovery.

And now April 15, 1889, the motion to take off the non-suit is overruled.

—Thereupon the plaintiff took this appeal, assigning the entry of the judgment of nonsuit and the discharge of the rule to vacate said judgment for error.

*Mr. H. U. Brunner* (with him *Mr. I. P. Wanger*), for the appellant.

Opinion of the Court.

Counsel cited: (1) Smyth v. Craig, 3 W. & S. 14; Bevan v. Insurance Co., 9 W. & S. 187; Howard Exp. Co. v. Wile, 64 Pa. 201; Maynes v. Atwater, 88 Pa. 496; Miller v. Bealer, 100 Pa. 583; McGrann v. Railroad Co., 111 Pa. 171; Jones v. Bland, 116 Pa. 190. (2) Murphy v. Crossan, 98 Pa. 495; Phila. etc. R. Co. v. Keenan, 103 Pa. 124; Phila. etc. R. Co. v. Spearen, 47 Pa. 305; Reeves v. Railroad Co., 30 Pa. 461; Tissue v. Railroad Co., 112 Pa. 91; Mullan v. Steamship Co., 78 Pa. 25, 32; Wharton on Neg., § 222; Patterson v. Railroad Co., 76 Pa. 389; Phila. etc. R. Co. v. Agnew, 11 W. N. 394.

*Mr. James Boyd*, for the appellees.

Counsel cited: (1) Chartiers Tp. v. Phillips, 122 Pa. 601; Del. etc. R. Co. v. Cadow, 120 Pa. 559; Shaffer v. Haish, 110 Pa. 575; (2) Allegh. Heating Co. v. Rohan, 118 Pa. 223; Dealey v. Railroad Co., 21 W. N. 45; Lehigh V. Coal Co. v. Jones, 86 Pa. 432; Keystone Bridge Co. v. Newberry, 96 Pa. 246. (3) Phil. etc. R. Co. v. Hughes, 119 Pa. 302; Lehigh V. R. Co. v. Greiner, 113 Pa. 600; Monongahela City v. Fischer, 111 Pa. 9; Krum v. Anthony, 115 Pa. 431.

PER CURIAM:

The negligence in this case was not that of the defendant company, but of Missimer, the boss or foreman, under whom the plaintiff was working, and who was, under all our cases, a fellow-workman. This was of itself sufficient to justify the learned judge below in entering a judgment of nonsuit. Aside from this, he makes out, upon the uncontradicted testimony, a very strong case of contributory negligence.

Judgment affirmed.