ARABELLA PARKER *v.* BOSTON & MAINE RAILROAD.

January Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed May 5, 1911.

*Trial—Declaration—Motion for Separate Verdicts on Each Count—Carriers of Passengers—Injuries to Passengers—Liability—Derailment—Negligence—Presumption of Negligence—Evidence—Admissibility—Opinion Evidence—Speed of Train—Knowledge of Witness—Non-responsive Answers—When Error—Redirect Examination—Scope—Care Required in Carriage of Passengers—Instructions—Too High Standard —"Utmost Caution Characteristic of Very Careful and Prudent Men"—Damages—Loss of Earnings—Pleadings—Facts or Conclusions—Excessive Damages—Power of Supreme Court to Set Aside Verdict.*

Where all the counts in a declaration rely on the same cause of action, and merely vary in statement to meet the possible phases of the evidence, the issue joined on each count is the same issue, and a motion for a verdict on each count should not be entertained, because that practice might result in a verdict each way on a single, indivisible cause of action.

In an action against a carrier for injuries to a passenger resulting from the derailment of a train, proof of the derailment is *prima facie* proof of defendant's negligence and gives the case to plaintiff on that point, unless the defendant meets it by counter proof sufficient, not to overbalance the proof afforded by the derailment, but to equalize it, whereupon plaintiff would fail, as the burden of showing defendant's negligence is on plaintiff throughout the case.

A carrier is not an insurer of the safety of its passengers.

In an action against a carrier for injuries to a passengers reulting from the derailment of a train, the question of defendant's negligence *held*, under the evidence, for the jury.

In an action against a carrier for injuries to a passenger resulting from the derailment of a train, where all the counts of the declaration al-

leged negligent running of the train, though some of them did not
allege unsafe roadbed and track, evidence of the condition of the track
was admissible under all of the counts, as bearing on the issue of the
negligent running of the train, as was also evidence of the rotten con-
dition of the ties just after the accident.

It was not necessary to allege the condition of the roadbed and track,
as it was sufficient to allege generally the negligent and unskilful
running of the train, without specifying further.

A photograph of the wreck was verified sufficiently by testimony that it
was a substantially correct likeness.

An objection to a witness' testimony as to the steepness of a hill at the side
of a railroad track, because he could only estimate its distance from
the track, goes to the weight of the testimony and not to its admissibility.

The Supreme Court will not consider an objection to evidence which was
not raised below.

In an action against a carrier for injuries to a passenger in June, evidence
that the passenger at the time of the accident was under a contract
to teach in a business college at a specified annual salary was admissible
to show the value of her time, though she cancelled the contract after
the injury, thinking that she could not perform it.

It was not error to allow a person on a train at the time of its derailment
to testify that it was running "very fast".

Error does not appear in the admission of testimony on redirect exami-
nation of a witness, where the record fails to show that the testimony
was not made admissible by the cross-examination.

In an action against a carrier for injuries to a passenger, where a physician
of many years' practice in the community testified that he had charged
plaintiff $500 for his services in attending her in consequence of her
injury, he was properly allowed further to testify that this charge was
one-half less than the regular charge.

A witness' non-responsive answer should be stricken out only when it
includes irrelevant matter, and so, in an action for personal injuries,
where a physician testified that he had treated plaintiff for the injury
received and had done the best he could for her, his statement on
cross-examination, in answer to the question whether he meant that
no one could have done more for her, that he had done the best he
could "with the best possible counsel I could get," was properly allowed
to stand, though the quoted part of the answer was non-responsive,
as it bore on the witness' qualification for treating plaintiff.

In an action for injury to plaintiff's elbow, where a physician was asked
what in his opinion would be the natural result of an injury to
the elbow, his answer, confined strictly to the question and based
on adequate data, was not objectionable, though in cross-examination
after the answer he admitted that the result was not always the same,
but that he had to consider the treatment and that he did not take
that into account in his answer.

Error in the admission of testimony is not predicable on facts elicited in cross-examination after the testimony has been given.

The action of plaintiff's counsel in asking plaintiff a proper question as to why a physician who had examined her arm was not present to testify, after the court had sustained objections to improper questions to prove that fact, was not such misconduct as to require a new trial.

In an action against a carrier for injury to a passenger resulting from the derailment of a train alleged to have been caused by defective rails, where a witness for defendant testified on cross-examination that defendant relaid the rails after the accident, and that three-fourths of them were relaid elsewhere, it was error not to allow defendant on redirect examination, for the purpose of rebutting the inference of negligence, to show that three-fourths of the rails were relaid in the main track to replace worn or broken rails.

The introduction of evidence that might have been excluded on objection does not necessarily open the door to the other party to introduce incompetent evidence; but, where such evidence tends to render a disputed fact more probable, even if so remote as not to be admissible as legal evidence, the adverse party has a right to meet it with counter evidence.

The standard of care to which a carrier of passengers is required to attain is that of a prudent man in the same circumstances; and the degree of care required in a particular case must be commensurate with the circumstances that call for its exercise.

In an action by a passenger against a carrier for injuries resulting from the derailment of a train, an instruction that the carrier must exercise the "utmost caution characteristic of very careful and prudent men", imposes on the carrier too high a degree of care, as the word "very" means exceedingly, excessively, and the word "excessive" means exceeding what is usual or proper.

In an action by a passenger against a carrier for injury inflicted by a suit case that fell from a rack in the car in consequence of a derailment, where plaintiff relied on negligent running of the train, unsafe roadbed, and negligent management of the train in allowing the suit case to remain in the rack, the refusal to apply a less degree of care to the suit case than to the train was not error, because the derailment caused the suit case to fall without the intervention of any diverting force, and, hence, if the carrier's negligence was established as to the derailment, it would be liable regardless of its care in respect of the suit case.

In an action by a passenger for injuries, where the several counts of the declaration relied on the same cause of action, and merely varied in statement to meet the possible phases of the evidence, and the evidence supported all of the counts, the court properly refused to charge that, unless the essential elements of negligence alleged in some one count were established, no recovery would be had, and that no recovery could be had on a state of facts recited in all the counts combined.

On exception to the overruling by the trial court of a motion to set aside a verdict as excessive the Supreme Court has power to set the verdict aside for that cause, where the trial court does not do its duty in refusing to grant the motion, as it would not in refusing to set aside a verdict that was manifestly excessive, or the product of prejudice or passion, or of a purpose to punish a party for obtaining a new trial.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1910, Orleans County, *Waterman*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Young & Young* for the defendant.

That the passenger was injured without fault on his part raises no presumption of negligence on the part of the carrier and does not place on the latter the burden of proving that the injury was not caused by its negligence. *Railroad Co.* v. *Buckelew*, 3 Tex. Civ. App. 272, 22 S. W. 994; In the absence of any statute or ordinance on the subject, no rate of speed in running a railroad train is negligence *per se*. *Southern Ind. R. R. Co.* v. *Messick*, 35 Ind. App. 676, 74 N. E. 1097; *Houston* v. *Vicksburg etc. Co.*, 39 La. Ann. 796, 2 So. 567; *Maher* v. *Atlantic & Pacific R. R.*, 64 Mo. 267; *Farve* v. *Louisville etc. Co.*, 42 Fed. 441; *Nolan* v. *N. Y. etc. R. R.*, 53 Conn. 461, 4 Atl. 406; *Cohoon* v. *Chicago etc. Co.*, 90 Iowa 169; *Chicago etc. Co.* v. *Bunker*, 81 Ill. App. 616; *New York Central & St. Louis R. R. Co.* v. *Kistler*, 66 Ohio St. 326.

There was no evidence of defendant's negligence. The evidence is uncontradicted that the cause of the accident was the "kinking" or "kicking out" of the rail from some cause; and that there was no known means of preventing the accident in the circumstances. Therefore the court should have directed a verdict for defendant. *International etc. R. R. Co.* v. *Halloren*, 53 Tex. 46, 3 Am. & Eng. R. R. Cas. 343; *McPadden* v. *New York Central*, 44 N. Y. 478; *Roanoke Ry. & Electric Co.* v. *Sterrett*, 108 Va. 533, 53 Am. & Eng. R. R. Cas. 611; *Arkansas etc. Co.* v. *Canman*, 52 Ark. 517.

Defendant is chargeable with a less degree of care in respect

of the suit case than in respect of the roadbed and the running
of the train.    *Morris* v. *N. Y. etc. Co.*, 106 N. Y. 678; *Wabash
etc. R. R. Co.* v. *Locke*, 112 Ind. 404; *Farley* v. *Pennsylvania
Traction Co.*, 132 Pa. 58; *Norfolk etc. Co.* v. *Rhoades*, 109 Va. 176.

It was error to admit evidence of plaintiff's engagement
to teach in the business college at a specified annual salary.
This element of damage is not relied on in the declaration, and
special damages must be alleged to be recovered.    *Stratton* v.
*Lyons*, 53 Vt. 130, 144; *Austin & McCargar* v. *Langlois*, 83 Vt.
104; *Hutchinson* v. *Granger*, 13 Vt. 386; *MacGregor* v. *R. I. Co.*,
27 R. I. 85, 60 Atl. 161.    "Although there may be a special
averment of loss of time, or loss of time is general damage under
the allegations descriptive of the injuries, the better doctrine
is believed to be that there can be no recovery of the value of
the plaintiff's time in a particular occupation, unless such occu-
pation is stated in the declaration or petition."    Watson on
Damages for Personal Injuries, §493; *Tomlinson* v. *Derby*,
43 Conn. 562; *Taylor* v. *Monroe*, 43 Conn. 36; *Wabash etc. R. R.
Co.* v. *Friedman*, 146 Ill. 583; *Gardner* v. *Burlington etc. R. R.
Co.*, 68 Iowa 588; *Baldwin* v. *Western R. R. Corp.*, 4 Gray 333;
*Heiser* v. *Loomis*, 47 Mich. 16; *Joslyn* v. *Grand Rapids Ice Co.*,
50 Mich. 516; *Silsby* v. *Car Co.*, 95 Mich. 204; *Coontz* v. *Missouri
Pacific R. R. Co.*, 115 Mo. 669.    Where it is sought to recover
for loss of time, upon a valuation fixed with reference to special
contracts or engagements, then such special and particular
damages and the facts on which they are based, must be set
forth in the declaration.    Watson on Damages for Personal
Injuries, §494; *Chicago etc. R. R. Co.* v. *Meech*, 163 Ill. 305;
*North Chicago etc. R. R. Co.* v. *Barber*, 77 Ill. App. 257; *Citizens
Street R. R. Co.* v. *Burk*, 98 Tenn. 650.

The misconduct of counsel in persisting in getting before
the jury the reason of Dr. Scudder's absence, after repeated
rulings of the court that this evidence was not admissible,
is ground of reversal.    A "form of misconduct which will,
as a general rule, constitute ground for a new trial is where
counsel, in disregard of the court's ruling that a certain line of
evidence is inadmissible, persists in attempting to get such
evidence before the jury."    *Chicago City R. R. Co.* v. *Gregory*,
221 Ill. 591, 6 Am. & Eng. Ann. Cas. 220, and note.    This

rule appears to be well established in Alabama, Illinois, Iowa, Michigan, Minnesota, Ohio, Wisconsin, California, New York, Washington and Kentucky, and Vermont. *Birmingham etc.* v. *Bradley*, 108 Ala. 205, 19 So. 791; *Robinson* v. *Bailey*, 113 Ill. App. 123; *State* v. *Ean*, 90 Iowa 534, 58 N. W. 898; *State* v. *Roscum*, 119 Iowa 330, 93 N. W. 295; *Atherton* v. *Defreeze*, 129 Mich. 364, 88 N. W. 886; *Cleveland etc. R. Co.* v. *Pritschau*, 69 Ohio St. 438, 69 N. E. 663; *Belyea* v. *Minneapolis etc. R. Co.*, 61 Minn. 224, 63 N. W. 627; *Barton* v. *Bruley*, 119 Wis. 326, 96 N. W. 815; *Hocks* v. *Sprangers*, 113 Wis. 123, 87 N. W. 1101; *Chicago etc. R. Co.* v. *Kline*, 220 Ill. 334, 77 N. E. 229; *People* v. *Dervert*, 138 Cal. 467, 71 Pac. 564; *Hood.* v. *Chicago etc. R. Co.*, 95 Iowa 331, 64 N. W. 261; *Iverson* v. *McDonnell*, 36 Wash. 73; *Stratton* v. *C. H. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831; *Westby* v. *Washington Brick Co.*, 40 Wash. 289, 82 Pac. 271; *Cargill* v. *Com.*, 13 S. W. 916.

The defendant is bound only to the highest practicable degree of care, and it was error to instruct that the care required "utmost caution characteristic of very careful and prudent men". *Libby* v. *Maine Central R. R. Co.*, 85 Me. 34, 58 Am. & Eng. R. R. Cas. 81; *Ware* v. *Ill. Cen. R. R. Co.*, 119 Ill. App. 456; *Jeffersonville R. R. Co.* v. *Hendricks' Admr.*, 26 Ind. 228; *Cincinnati etc. Ry. Co.* v. *Vivion*, 19 Ky. L. Rep. 687; *Posch* v. *Southern Elec. R. R. Co.*, 76 Mo. App. 601.

*Williams & Dane*, and *Howe & Hovey* for the plaintiff.

The duty that a carrier owes a passenger is to exercise the utmost care that is characteristic of very careful and prudent men. *Penn. Ry. Co.* v. *Roy*, 102 U. S. 541; *Hadley* v. *Cross*, 34 Vt. 585; *Taylor* v. *Grand Trunk Ry.*, 48 N. H. 304, 2 Am. Rep. 229; *Phila. etc. Co.* v. *Allen*, 62 Atl. 245; *Maxfield* v. *Maine Central Ry. Co.*, 60 Atl. 710; *Carroll* v. *Staten I. R. Co.*, 17 Am. Rep. 224. The language of the charge is substantially that of Mr. Justice Harlan, in *Pennsylvania Co.* v. *Roy*, 102 U. S. 541; and Chief Judge Poland, in *Hadley* v. *Cross*, 34 Vt. 585. "In any business involving the personal safety and lives of others, what is due care, reasonable diligence? Clearly nothing less than the most watchful care and the most active diligence; anything

short of this is negligence and carelessness, and would furnish clear ground of liability if an injury was thereby sustained." In *Stokes* v. *Saltonstall*, 13 Pet. 181, referring to the degree of care required, the court said the carrier was bound "as far as human care and foresight can go to transport them safely." *Laing* v. *Colder*, 49 Am. Dec. 533; *Bowen* v. *N. Y. C. R. Co.*, 72 Am. Dec. 529; *West Md. Co.* v. *Shivers*, 61 Atl. 618; *Cheetham* v. *Union R. Co.*, 58 Atl. 881; *O'Clair* v. *R. I. Co.*, 63 Atl. 238; *Topp* v. *United Rys. Co.*, 59 Atl. 52; *Baltimore R. Co.* v. *Nugent*, 39 L. R. A. 161; *Fewings* v. *Mendenhall*, 60 L. R. A. 601.

It was proper to allow plaintiff to show that she was under contract to teach in a business college at a specified annual salary, as this showed the value of her time, directly and definitely, without any element of speculation. *Nones* v. *Northouse*, 46 Vt. 587; *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489; *Goodhart* v. *Penn. R. Co.*, 177 Pa. St. 1; *Braithwaite* v. *Hall*, 168 Mass. 38.

ROWELL, C. J. This is case for negligence. On June 26, 1909, the plaintiff was a passenger on the defendant's north bound express train No. 41 known as the Boston & Montreal Air Line Train, when it was derailed on the "Snake Alley" section of the road twelve miles north of Wells River. She was sitting at the time on the left side of the car on the end of the seat next to the aisle, and as she instinctively threw up her right arm, it was hit and injured on the elbow by a dress-suit case that was thrown from a rack on the opposite side of the car.

The declaration contains three counts. The first is based upon negligent, careless, and unskilful running of the train, whereby the car in which the plaintiff was riding was derailed and thrown from the track, and the injuries complained of inflicted. The second count is based upon unsafe roadbed and track, negligent and unskilful running, and derailment. The third count is based upon negligent and unskilful running, control, and management of the train, unsafe and unfit cars, and negligence and carelessness in suffering and allowing heavy dress-suit cases and traveling bags to be and remain upon the shelves and racks in the car in which the plaintiff was riding, by reason whereof such a case was suddenly and with great

force thrown from a rack upon and against the plaintiff, causing the principal injuries complained of. This count does not allege derailment. The general issue is joined on the plea of not guilty.

At the close of all the evidence the defendant moved for a separate verdict on each count, because the evidence failed to establish the allegations of each; because the evidence did not establish negligence on the part of the defendant in any of the respects complained of in any; and because on all the evidence the plaintiff was not entitled to recover. This motion was properly overruled. Such a practice does not obtain in this State, and ought not to obtain. It is to be noticed that the counts are not based upon separate and distinct causes of action, but upon the same cause of action, though varied in statement to meet the possible exigencies of the case that the evidence might present, and so the issue joined on each count is not a separate and distinct issue, but the same issue that is joined on the other counts. Therefore the practice asked for, if adopted, might result, and often would result, in a verdict each way on a single, indivisible issue and cause of action, whereas there should be but one verdict, whichever way it is, as there is but one issue. Even under the Reg. Gen. Hil., 4 W. IV, a verdict can not be entered distributively when the right is entire, but only when it is divisible. Thus, in trespass *qua. clau.*, the defendant pleaded a general right of way for the convenience of his close, but proved only a limited right of way. Held, that the plaintiff was entitled to an entire verdict, and that the defendant could not enter it distributively for the right found for him. *Higham* v. *Rabet* , 5 Bing. N. C. 622, 35 E. C. L. 253. But where the plaintiff declared for a right of ferry to and from, and proved a right only from, the verdict was entered distributively, the right being divisible. *Giles* v. *Groves*, 12 Ad. & El., (N. S.), 721, 64 E. C. L. 721.

The practice called for by this motion would be much like splitting an entire cause of action and bringing separate suits on the parts, which cannot be done. *Bullard* v. *Thorpe*, 66 Vt. 599, 30 Atl. 36, 25 L. R. A. 605, 44 Am. St. Rep. 867.

The defendant also moved for a verdict on all the counts, because the defendant was not an insurer of the safety of the

plaintiff while a passenger; because the evidence fails to show negligence on the part of the defendant with relation to any of the duties that defendant owed the plaintiff as a passenger; because on the evidence the derailment was the result of some accident against which the defendant could not guard and for which it was not liable; because on the evidence the defendant exercised due care with relation to its duty as a carrier and fully discharged its duty to the plaintiff; and because on all the evidence the plaintiff is not entitled to recover.

While it was sound to say that the defendant was not an insurer of the safety of the plaintiff, that is hardly a ground on which to base a motion for a verdict, so we pass that proposition without further comment.

As to the evidence not showing negligence on the part of the defendant but showing due care, these grounds of the motion cannot be sustained, for the derailment itself was *prima facie* evidence of such negligence and want of such care. This is so generally held that it is unnecessary to cite cases in support of it. But the defendant says that such is not the law of this State, but that here, negligence must be proved and cannot be presumed, and so it must, and it *was* proved, *prima facie*, by proving the fact of derailment, which gave the case to the plaintiff on this point, unless the defendant met it by counter proof sufficient, not to overbalance the proof afforded by the derailment, but to equalize it, for then the plaintiff would fail, as the burden of showing negligence on the part of the defendant did not shift, but remained on the plaintiff throughout, and at the end she must have held her case good on this question and at the requisite legal height against all counter proof. *Harrison's Admr.* v. *Northwestern Ins. Co.*, 80 Vt. 148, 66 Atl. 787; *Gleeson* v. *Virginia Midland R. R. Co.*, 140 U. S. 435, 444, 35 L. ed. 458, 11 Sup. Ct. 859.

The presumed peculiar knowledge of the carrier is the reason for saying that derailment is *prima facie* evidence of negligence, as shown by *Mann* v. *Birchard*, 40 Vt. 326, 94 Am. Dec. 398. That was an action against common carriers for negligence in not transporting property to its destination within a reasonable time. The Court said that the unusual and unexplained delay and failure to deliver the property according to the general

22

course of business, raised a natural presumption of negligence, and was sufficient *prima facie* evidence of want of due care; that it was by no means incumbent upon the plaintiff to prove that there was *not* some unavoidable accident or other unforseen occurrence that would relieve the carrier from this natural presumption; that to require the plaintiff, in making out a *prima facie* case, to assume the burden of negativing the occurrence of matters out of the usual course of events and peculiarly within the knowledge of the carrier, would be an extraordinary perversion of the natural and ordinary rules of evidence.

As to the derailment being the result of some accident against which the defendant could not guard and for which it is not liable. The testimony on the part of the plaintiff tended to show that the track where the accident happened had a number of reverse curves, on one of which the derailment occurred, and on which the rails on the west side of the track were worn on the inside from a quarter of the way to all way to the web; that immediately after the accident the ties were found broken more or less where the wheels ran over them, and some of them were rotten, and spikes were pulled out of some where the rails were turned over; that the west rails were turned over nearly the whole length of the train, and that some of the spikes on the inside of the rails were drawn sufficiently to let the rails out from under the heads of the spikes; that the worn condition of the rails extended ten or twelve rods each way from the place of accident, and that the rails were worn more or less on every curve between there and East Barnet station. The accident, as we have said, happened the 26th of June. The train left Wells River that day at 3:55 p. m., twenty or twenty-five minutes late, and was derailed twelve miles north of there at about 4:15. It was very hot that day, and had been for several days.

The plaintiff's theory of the accident is, that some of the ties at the place of derailment being unsound, the outer rails on the curve being worn on the inside from half way to the web to all the way; the train running too rapidly around the curves,—the track was insufficient and gave way, causing the injury complained of.

The defendant claims that the accident was caused by a "kink" or "kick-out" of the west rail where the engine left the iron when it struck that point. It says that the plaintiff has advanced no theory to account for the accident; that the most that can be drawn from her evidence is, that there were a few ties somewhat decayed and the rails somewhat worn, but that no witness testified to, and no evidence tended to show, such a condition of the track before the accident as to render it unsafe nor to lead anyone to the opinion or belief that it was unsafe; that the witnesses who testified to seeing worn rails and rotten ties before the accident did not suggest that the wear was sufficient nor the rotten ties numerous enough, to affect the safety of the track. The defendant's theory is, that the excessive heat, the action of the wheels on the track, and the slight departure of the track from a level in the vicinity of the accident, caused the rails to crawl and expand so that the rail that "kicked out" from the expansion, heat, and crawling, came in contact with the end of the next rail so firmly that when the engine struck the rail that had the "kick-out", the strain on it from the heat and the contact with the other rail, combined with the strain that the engine gave it when it struck it, caused the rail to "kink" under the train, and permitted the wheels on the opposite side of the engine to drop to the ties so that the west rail canted to the west, letting the wheels of the engine follow along in the throat of the rail as it went until the engine came to a stop. The defendant also claims that its evidence showed that it was impossible by inspection before the accident to detect the strain or that the ends of these two rails were so close together as to be dangerous, and that no evidence was introduced that this could be detected or determined.

This claim and theory is based largely upon the testimony of the defendant's division civil engineer, a man of wide experience in railroad construction. He testified that from the investigation he made of the track immediately after the accident, his opinion was that it was caused principally by the expansion of the rails; that the heat the day of the accident and for a few days before was excessive; that the rails gradually moved together so that the ends came in contact with one another; that it was possible that when such another train went down,

it shoved the rails a little; that when the train in question came up it took the curve all right and went about half way on it to this point that was just right to spring out, and that when the front of the engine struck that point it did spring out, letting the wheel on the opposite side drop in, that the rail canted and the flange of the engine followed upon the web of the rail.  He further testified that from his study and knowledge of those matters it is a fact that rails do get out in that way under trains; that a man would have to watch the track very close to tell when rails come up so close together that they become dangerous; that he did not think he could do it; that iron and steel are so susceptible to climatic conditions as regards heat that in constructing tracks an allowance is always made for expansion, which, he said, is a power he did not know how to cope with in respect of steel, which varies with the temperature continually, and will expand from an eighth to a quarter of an inch in a difference of from forty to fifty degrees of temperature.  The defendant's testimony further tended to show that there is no known means of guarding against such an accident as it claims this was, unless it happens at such a time that it is discovered by an inspection of the track; that if it happens when the train hits the joint, there is no means of guarding against such an accident.

Thus it appears that the testimony was conflicting as to the cause of the accident, and therefore, as said in *Gleeson's* case above cited, it was for the jury to say in the light of all the testimony, under the instructions of the court, whether the relation of cause and effect existed, as claimed by the defendant, between the accident and the asserted exonerating facts and circumstances.

The remaining ground of the motion is that on all the evidence the plaintiff is not entitled to recover.  It is obvious from what has been said that the court could not direct a verdict for the defendant on this ground, and the motion was properly overruled.

We come now to consider the defendant's exceptions to the admission and exclusion of evidence.  The plaintiff offered to show the condition of the ties just after the accident as to being broken and cut up, for the purpose of showing their con-

dition before the accident. The defendant objected that it was admissible only in connection with testimony tending to show changes in condition. It insisted that the plaintiff should state under what count it was offered, claiming that it was admissible only under the second count at most, as no other count alleged unsafe roadbed and track. But the court refused to require the plaintiff to state under what count she offered the testimony, but admitted it generally, and the defendant excepted. But the testimony was admissible under all the counts, though some of them did not allege unsafe roadbed and track, for all allege negligent and unskilful running, and the condition of the track was an element to be considered in determining the character of the running in that respect. *Chicago etc. Railway Co.* v. *Lewis*, 145 Ill. 67; Note 7 A. & E. Ann. Cas. 991, 33 N. E. 960. This is so because it was not necessary to allege the condition of the roadbed and track, as it was enough to allege generally negligent and unskilful running, without alleging in what it consisted. Thus, in case for inducing the plaintiff's wife to continue absent, it is sufficient to state the fact of persuasion, etc., without stating the means used. So in actions for diverting water or obstructing a right of common, way, etc., it is sufficient to allege generally a diversion or a disturbance, without showing how it was done. 1 Chit. Pl., 13th Am. Ed., [*391]; *Clark* v. *Employer's Liability Co.*, 72 Vt. 458, 466, 48 Atl. 639. The testimony was also admissible to show the condition of the ties before the accident, certainly as to their looking rotten, for that condition must have antedated the accident.

The exception to the admission of the photograph of the wreck because not properly verified can not be sustained, for there was testimony tending to show that it was a substantially correct likeness of the wreck.

The objection to the admission of Moore's testimony to the steepness of the hill west of the track because he could only estimate its distance from the track, went to its weight rather than to its admissibility.

The plaintiff was allowed to show that at the time of her injury she was under contract to teach in a business college for a year from the following September at a salary of $855.

The defendant objected that the testimony was "inadmissible, immaterial, and improper evidence here," and excepted to its admission. It now objects that that was a matter of special damage, and should have been specially alleged. But it not appearing that this objection was made below, it cannot be made here. We have decided this so often that it has become trite.

But ·the defendant says that under a state of pleading making evidence of special ability admissible, this evidence would not be admissible; that the question would then be, what was her time reasonably worth. But taking that to be the question, the testimony was admissible as tending to show the value of her time. Thus, in an action by a practicing physician for damage resulting from personal injury, the true test was held to be what his services might fairly be expected to be worth to him in his business. *Holmes* v. *Halde*, 74 Me. 28, 43 Am. Rep. 567. So in *Nebraska City* v. *Campbell*, 2 Black, 590, 17 L. ed.271, the plaintiff in error was a practicing physician, and evidence was given that he was engaged in extensive practice at the time of the injury, and that it was a period of great sickness in the community, and it was held that evidence was pertinent to show the extent of the plaintiff's ordinary business, and to lay a foundation to enable the jury, with some degree of certainty, to ascertain the direct and necessary damage sustained by the injury. *Wade* v. *Leroy*, 20 How. 34, 15 L. ed. 813, is to the same effect.

It was held in *Richmond & Danville R. R. Co.* v. *Elliot*, 149 U. S. 266, 37 L. ed. 728, 13 Sup. Ct. 837, which was an action for personal injuries negligently inflicted, that it was error to admit evidence in respect to the probability of the plaintiff's promotion in the service of his master and a consequent increase of wages; that it was enough to show what the plaintiff had in fact been deprived of; to show his physical health and strength before the injury; his condition after the injury; the business he was engaged in; the wages he was receiving; and perhaps the increase he would receive by any fixed rule of promotion; but that beyond that it was not right to go by introducing testimony that simply opened the door to a speculation of probabilities. *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489, 74 Atl. 108,

24 L. R. A. (N. S.) 128. And here is where the line is drawn, between speculation and reasonable certainty, and the testimony we are considering falls on the side of reasonable certainty, for the higher wages were fixed by a contract in force at the time of the injury, and whether it was in force at the time of the trial is immaterial, for if it was not, it was because she cancelled it after the injury, thinking that she could not perform it, as her testimony tended to show she could not.

It was not error to allow a witness who was on the train at the time of the accident to testify that it was running "very fast". 3 Wig. Ev. §1977, and notes.

As to Dr. Gaines's testimony in redirect examination that he did not think he should be able to improve the plaintiff's elbow it is enough to say that it does not appear but it was made admissible by the cross-examination if not otherwise admissible.

The doctor further testified that he had attended the plaintiff every day from the time of her injury to the time of trial, and on several occasions had visited her twice a day, and had dressed her arm every day; that he had done everything he possibly could for her, and had charged her, $500.00 for his services. He was then asked whether that was or was not less than the usual, ordinary, reasonable charges for such services in that vicinity, and he said it was one-half less. The defendant seasonably objected that the question was immaterial; that whether reasonable or unreasonable was the only question; that the way to show that was, to show what he did, and what the regular charges therefor would be in that vicinity; and excepted to the admission of the answer. But the testimony did show what the doctor did, though not just how he did it, which was not necessary; and the answer showed in a general way what a reasonable charge would be in that vicinity, for he had practiced there many years, and so must have known about the charges, and when he said that his bill was one-half less than the regular charges, he was saying, though in an argumentative way, what the regular charges were.

On cross-examination the doctor was asked, referring to his saying that he had done the best he could for the plaintiff, whether he meant to say that no one could do more for her, and he answered that he had done the best he could, "with the

best possible counsel I could get." The defendant asked to have the last part of the answer stricken out as non-responsive, which was refused. But there is nothing *per se* wrong in a non-responsive answer. It is wrong only when it includes irrelevant facts, in which case, especially when the witness is not a party, and the examiner is not to blame, it may be struck out and the jury directed to ignore it. But if it furnishes relevant facts, then they are none the less admissible merely because they were not specifically asked for. 1 Wig. Ev. p. 886. Here the part objected to included a fact relevant to the witness' qualification for treating the plaintiff, and so no error.

Dr. Longe, called by the plaintiff, saw her arm for the first time the 15th of December. He testified to its condition then, and what he discovered, but did not testify what the injury was, nor know what the treatment had been. He was asked on redirect examination, subject to objection and exception, what in his opinion would be the natural result of an injury to the elbow, such as he said the plaintiff received, with respect to synovitis, swelling, inflammation, blood poison, stiffness; and he answered that in a fracture of that kind there is usually more or less synovitis, sometimes blood poison, and stiffness and loss of motion, but that none of these conditions always follow.

The objection to the question was, that it should show the basis for the opinion called for, otherwise it could not be told, and therefore the opinion could not be met by counter proof; and that the natural results of a fracture of that kind would be different from the results in this case.

The only objection here made to the admission of this testimony is based upon what the witness said on cross-examination after the question was answered, to the effect that the answer was based upon the fact that there was a fracture involving the joint and an injury to the ulna nerve; that those two elements do not always produce the same results; that you have to consider the treatment in order to determine the probability of recovery of a fractured arm; that he did not take that into account in his answer; that the treatment and the extent of the injury are material elements in determining the probable results of a fracture; and that these matters were not

considered in making his answer. From all this it is argued that the effect of the testimony was, to tell the jury that the natural result of such an injury as the plaintiff received was just the result she claimed to have, without sufficient data as to elements determinative of the result to be expected, to enable the witness nor the jury to say whether the results were the natural results of such an injury or were due to improper medical treatment. But in this argument, sight is lost, both of the question and the answer, for the question is confined to the natural results in respect of getting synovitis, swelling, inflammation, blood poison, and stiffness, and the answer is as restricted as the question; and there is nothing to show that the data the doctor said he based his opinion upon were not adequate. And besides, error in admitting the testimony, if any there was, is not predicable of facts elicited on cross-examination after the testimony was given.

The plaintiff testified that Dr. Scudder of Boston examined her arm in October, and that she asked her brother in Boston to arrange with Dr. Scudder to come as a witness, and had before her a letter from Dr. Scudder to her brother concerning the matter. She was then asked if she could afford to pay Dr. Scudder his price of $200.00 a day as a witness, and she said "No". The defendant objected. Thereupon the court asked plaintiff's counsel if they proposed to introduce the letter, and they said "No." Her counsel then said they offered to show by her just what they asked her. The court excluded it. The plaintiff now claims that the question was answered without objection. But we think it was not so treated by court nor counsel in the time of it, and therefore we do not so treat it. Counsel then offered to show by her that she could not afford to pay the doctor's price for coming. To this the defendant objected because the price was contained in a letter not produced. The court excluded it. Then counsel offered to show by her that the doctor asked $200.00 a day and expenses, and that she could not afford to pay it. To this the defendant made the same objection, and the court excluded it. Then counsel asked her if she could afford to pay the doctor to come as a witness, and the court, of its own motion, excluded it. Counsel said that the offer was different from any they had

made, but the court thought it practically the same, and allowed the defendant an exception to the asking of the question, which was not answered.

The defendant claims that to ask the very question that had just been excluded was such gross misconduct as to entitle it to a new trial; that it was a deliberate attempt to prejudice the jury against it, and to convey the impression that if Dr. Scudder was a witness, his testimony would be favorable to the plaintiff, and that he was absent. only because the plaintiff was not able to pay him for being present.

The plaintiff claims, on the other hand, that error is not predicable of the mere asking of a question; that it was competent for her to account for Dr. Scudder's absence, to avoid any unfavorable inference against her because of it; and that it was not error to ask the question because it was not the same question covered by the offers; and if it was, still, in its final form, it was proper, and a responsive answer would have been admissible, and we think it would. There was, therefore, no error in asking the question, for the misconduct that vitiates consists in getting inadmissible evidence before the jury, not through the door of the law, but by "climbing up some other way". *Rudd* v. *Rounds*, 64 Vt. 432, 441, 25 Atl. 438; *Chicago City Railway Co.* v. *Gregory*, 221 Ill. 591, 6 A. & E. Ann. Cas. 220, and note, 77 N. E. 1112.

A witness for the defendant testified on cross-examination that the defendant relaid the rails through "Snake Alley" after the accident, and that three fourths of them were relaid elsewhere. On redirect examination the witness was asked where in the track they were relaid. The plaintiff objected that that was immaterial. Thereupon the defendant offered to show by the witness that three-fourths of them were relaid in the main track between Newport and White River Junction, to replace rails that were worn, injured, or broken. The question and the offer were excluded, and the defendant excepted. Whether the testimony elicited by the plaintiff on cross-examination was admissible or not, is a question that does not appear to have been raised below. But the testimony being in the case and suggestive of an implied admission by the defendant of negligence before the accident, it had a right to rebut such

inference by showing that the rails were put into the main track, for otherwise it might well have been thought that they were put into spurs and sidings, where they would come to little wear. Mr. Justice Stephen says that facts that support or rebut inferences suggested by other facts in evidence are deemed to be relevant as far as they are necessary for that purpose. Steph. Dig. Ev., Chase's Ed., 28, Art. 9. Our rule is practically the same, and is this; that the introduction of evidence that might have been excluded on objection, does not necessarily open the door to the other party to introduce incompetent evidence; but that when the evidence introduced is a circumstance morally tending to render a disputed fact more probable, even if so remote as not to be admissible as legal evidence, the other party has a right to do away with the impression it might otherwise create in the minds of the jury. *Lytle* v. *Bond's Estate*, 40 Vt. 618, 624; *Perry* v. *Moore*, 66 Vt. 579, 29 Atl. 806.

The standard of care in cases of this kind is that afforded by the care and prudence of a careful and prudent man in the same circumstances. This does not mean, of course, that the same degree of care is required in all cases, but means, when rightly understood, that the degree of care required in the particular case must be such as is commensurate with the circumstances that call for its exercise. The rule, thus understood, is flexible and easily applied; and there is more or less danger in giving it to a jury with a very free rendering, lest the standard be unconsciously raised or lowered. Here it is claimed that in doing that the standard was raised too high, as the "utmost caution characteristic of very careful and prudent men" was made the standard.

The plaintiff claims, on the other hand, that the charge, taken as a whole, as it must be, gives the standard as the utmost care and diligence consistent with the carrying on of the defendant's business and its duty to the public. If that were so, it might do; but it is hardly so, for the standard objected to was the refrain of the charge, and is so woven into it that it is an inseparable part of it, and gives tone and color to the whole. The question is, therefore, whether it was error to erect that standard, and we think it was. The word *very*, means, according to the dictionaries, exceedingly; excessively; extremely; re-

markably; surpassingly; and the like.  *Excessive* means, exceeding what is usual or proper.   It is the general term for what goes beyond just and reasonable measure or amount.   Excessively means, with excess; in an extreme degree; beyond measure, etc.

Thus it appears that the standard was raised higher than was just and reasonable, and that was error, for the rule we have stated, given in paraphrase, would not require the defendant to do more than human vigilance and foresight could *reasonably* do for the safety of the plaintiff, consistent with the mode and character of the conveyance and the *practical* operation of the road.

The defendant claims that it was error for the court not to apply a less degree of care to the suitcase than it did to the derailment.   But the injury inflicted by the suitcase was due to the derailment, and if negligence was established as to the derailment, the defendant was liable for the injury inflicted by the suitcase, regardless of its care concerning it, no diverting force having intervened, and the force exerted upon it by the derailment having continued till it spent itself in the injury. *Isham* v. *Dow's Estate*, 70 Vt. 588, 41 Atl. 585, 45 L. R. A. 87, 67 Am. St. Rep. 691.

The defendant claimed in divers ways during the trial that no recovery could be had unless the essential elements of negligence alleged in some one count were established by evidence admitted with relation to that count; that no recovery could be had on a state of facts formed by a combination of all the counts; and that no count alleged the three grounds, defective roadbed, negligent running, and the suitcase combined as the cause of injury.   But it is enough to say of this claim, that the evidence tended to support all the counts, and therefore should not have been restricted to any.   We have already seen that unsafe roadbed and track could be shown under all the counts though alleged in only some, because that was involved in the question of negligent running, which is alleged in all.   So could derailment be shown  under all though alleged in only some, because that was not an *element* of negligence but the *result* of negligence.   So could the injury done by the suitcase be shown under all though alleged in only some, for the suitcase was a

condition and not a cause, and therefore needed not to be alleged in order to be proved, though being alleged in one count it needed to be proved thereunder, and it was proved.

As the case is to go back for another trial, it is unnecessary to consider the merits of the motion to set aside the verdict as excessive. We take occasion to say, however, that we have power to set aside verdicts for that cause when the trial court does not do its duty in that respect, as it would not in refusing to set aside one that is manifestly excessive; or the product of prejudice or passion; or of a purpose to punish a party for obtaining a new trial.

There are several other exceptions that are not specially considered. Some of them are virtually disposed of by what has already been said. Some present questions not likely to arise again, as they spring out of transient circumstances and incidents of the trial. And if others involve questions that may arise again, they can scarcely present the same aspect they now present.

*Judgment reversed and cause remanded.*