EDWARD J. SPINNEY'S ADMINISTRATRIX *v.* O. V. HOOKER & SON.

May Term, 1916.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed October 2, 1917.

*Trial—Examination of Jurors—Reversible Error—Evidence—Report of Accident—Conclusions of Witness—Admission of Agent—When Admissible—Experts—"Res Ipsa Loquitur"—Negligence—Jury Question—Master and Servant—Duty of Inspection—Proximate Cause—Assumption of Risk—Contributory Negligence.*

A litigant is entitled to a reasonable measure of latitude in ascertaining who the jurors are, and what are their relations and affiliations, but this must be accomplished so far as possible without prejudicing the jurors against the adverse party; and so, in a negligence case where an insurance company is the real defendant, it is proper to bring the fact to the attention of the court, but it is improper and unnecessary and constitutes reversible error, baldly to announce it in the hearing of the jury.

A written report made by an official of a corporation to an insurance company, concerning an accident to an employee of the corporation, is not admissible in evidence against the corporation unless it is shown to have been made while the official was acting within the scope of his agency.

The testimony of a manager of a corporation that he made a report of an accident to an insurance company as a part of his duties as manager, without testifying further in regard thereto, is a conclusion drawn by the witness, and is not alone sufficient to establish the official character of the report and make it admissible in evidence.

A statement or admission of an agent, in order to bind his principal, must be one of fact, and the agent's opinions, inferences, conclusions and judgments are ordinarily to be rejected; and so, the statement of the manager of a corporation, in making report of the circumstances of the death of an employee, that the insulation of an electric cord was "worn off" is not admissible against the corporation.

In an action against a corporation to recover for the death of an employee, due to defective insulation of an electric cord, it was error to allow a witness to testify that he knew of no reason why the deceased should regard it as dangerous to take hold of the cord, the question being, not what the witness knew about it, but, what the facts were.

In an action against a corporation to recover for the death of an employee, due to defective insulation of an electric wire, it was not error to allow an expert electrician to testify in regard to the different ways in which a ground could be produced.

In such case it was not error to allow an expert electrician to testify that unless there was a ground, a person would not get a harmful shock by touching the bare wires, this evidence being admissible on the question of the degree of caution which the law required of the employer who asked his men to work in such surroundings.

In such case, evidence of the manager of the defendant corporation regarding the precautions taken by the defendant to prevent grounds is admissible, although the declaration did not declare upon that ground as the negligence sued for, but upon defective insulation, because the latter would have been harmless if the former had not existed.

In such case, evidence of the manager that no precautions were taken by the defendant to see that the insulation on the wires was well preserved was admissible.

In such case an exception to the admission of evidence to the effect that moving the electric lamp from place to place would cause the insulation on the cord to break away, was without merit, the witness being qualified to speak as an expert upon the matter, and there being evidence that the cord, when not in use, was coiled up and hung on a peg.

In an action to recover for the death of plaintiff's intestate, caused by coming in contact with an electric wire, the insulation of which had worn off, testimony of the wife of the deceased that her husband knew nothing about electricity, was inadmissible.

In such case, evidence of various witnesses that deceased had talked with them about the dangers of his employment, but made no mention of dangers from electricity, and also other evidence calculated to show that he was ignorant of such hazards, was admissible.

Where it appeared that plaintiff's intestate, an employee of defendant, was found dead at defendant's foundry under circumstances warranting the inference that he was electrocuted when he turned on

an electric light, furnished by defendant for use by plaintiff's intestate in his work, the insulation of the cord of which was worn off, the maxim *res ipsa loquitur* applied and a *prima facie* case of negligence was made out.

In an action against a corporation to recover for the death of an employee caused by the defective insulation on an electric cord, the fact that it would naturally take some time for the insultation wholly to disappear, together with evidence of the extent to which it was worn away, and that slight shocks had been previously received therefrom, was enough to carry the case to the jury on the question whether this condition had existed before the accident and for so long a time that defendant ought to have discovered it.

Where an electric light and cord is furnished by an employer for use by its employee in doing his work, it is the duty of the employer to exercise constant and active vigilance of a searching character to keep this apparatus safe; and it is for the jury to say whether such inspection as this duty required would have discovered that the insulation on the cord had become worn off.

Where plaintiff's intestate was killed by an electric current from a grounded wire by coming in contact with an electric wire, the insulation of which had become worn off, the lack of insulation was a proximate cause of the accident, in causal relation, stood next to the effect, and was a cause *sine qua non.*

There may be more than one proximate cause concurring to produce a result.

In an action against an employer to recover for the death of an employee, the questions of assumption of risk and contributory negligence, were, upon the evidence, for the jury.

CASE FOR NEGLIGENCE.  Plea, the general issue.  Trial by jury at the December Term, 1913, Caledonia County, *Fish,* J., presiding.  Verdict for plaintiff.  Defendant excepted.  The opinion states the case.

*John W. Redmond* and  *Charles H. Darling* for defendant.

*Porter, Witters & Harvey* and *F. S. Rogers* for plaintiff.

POWERS, J.  This is a common law action for negligence brought by the administratrix of Edward J. Spinney, who was electrocuted while at work for defendant in its foundry.  It was

a part of Spinney's duties to line the cupola with moist clay pre-
paratory to melting iron therein.    This cupola was of iron or
steel and stood upon legs high enough to enable a man to crawl
under it.    It had a metal floor, through the center of which was
an oval man-hole with an iron cover.    When called upon to line
the cupola, Spinney would crawl under it, remove the cover of
the man-hole and lay it on the ground.    He would then stand up
in the man-hole, his feet resting on the iron cover, and coat over
the inside of the furnace part of the cupola with the soft clay,
using his bare hands for the purpose.    There was a slag-hole in
the back side of the cupola and the clay had to be pressed around
an iron pipe therein; and this was usually the last thing done
in the process.    In order to do this work, it was necessary to have
the inside of the cupola lighted in some way, so the defendant
furnished an electric light for that purpose.    This was attached
to an ordinary extension cord which plugged into a socket in the
room above, and when it was in use was let down into the cupola
through the feed door and hung against the side of the cupola.
This light was turned on and off by the usual hard rubber key,
and was in all respects like the lamp in common use.    The cur-
rent which supplied this lamp came from an electric plant owned
and operated by the defendant located just across the river from
the foundry.    The day before Spinney met his death, he was di-
rected to line up the cupola, and he proceeded to do so using the
electric light as usual.    He finished this work, except the slag-
hole, and turned off the light and quit for the day.    It had been
raining for several days; and it rained all that night.    The next
morning Spinney went to work in the rain without protection,
and got his feet and clothing very wet.    He was directed to
finish the cupola and entered it to do so.    Soon after, his lifeless
body was found there under circumstances warranting the infer-
ence that he was electrocuted when he turned on the electric
light.    After his body had been removed, it was discovered that
the insulation was gone from the wires entering the socket of
this lamp for a distance of one-fourth of an inch.    The system
which supplied the current to the foundry was a three-phase
system, and the case shows that one of the three wires must have
been grounded at the time of the accident to enable Spinney to
get a fatal shock from the wires supplying the lamp.    The case
also shows that if the wires had been properly insulated the
ground would not have caused the accident.

During the examination of the jurors, and when counsel were at the bench, one of the attorneys for the defendant informed the court that his client had a liability policy in the American Fidelity Company of Montpelier, and he asked for an exception in advance to any inquiries that might be made by the plaintiff's counsel which involved that company. Such an exception was not granted, but counsel were cautioned by the court regarding the matter. Afterwards, counsel for the plaintiff asked the jurors if any of them were stockholders in the American Fidelity Company of Montpelier, and when counsel for the defendant objected and claimed an exception, replied that "evidence in this case as already put upon the record is that this company is interested in this case"; and after some discussion, and after the question was repeated, an exception was allowed,— which exception, we take it from the whole record, was intended to cover both the question and the statement.

The questions raised by this exception have caused the courts no little perplexity and have resulted in some confusion and loose statements in the cases. The simple fact is that no general rule has or can be formulated that will accurately apply to every case. Much depends upon the good faith of counsel. That a litigant is entitled to a trial before an impartial and disinterested jury is fundamental. He must be given a reasonable opportunity to secure such a panel. He cannot do this unless he is given a reasonable measure of latitude in ascertaining who the jurors are and what their relations and affiliations are. This, however, must be accomplished, so far as possible, without prejudicing the jurors against the adverse party. In the case in hand, an insurance company was the real defendant. Its stockholders and officers were legally disqualified to sit in the case, and its agents and servants subject to challenge in the discretion of counsel. It was proper to bring these facts to the attention of the court, but it was improper and unnecessary to baldly announce the facts in the hearing of the jury. It is possible in such cases for an attorney, who is acting in good faith and with a proper regard for the rights of his adversary, to elicit all necessary information without disclosing to the jurors the reason prompting his inquiries. And without attempting to mark out a definite course to be pursued, which might be a difficult undertaking, we hold that counsel here overstepped the bounds of fair and legitimate practice, and sustain the exception.

The plaintiff called F. B. Hooker, manager of the defendant, as a witness, and in connection with his testimony was allowed, subject to exception, to put in evidence a written report of this accident made by him on the day it took place to some undesignated person or corporation. Counsel agree that this report was made to the American Fidelity Company, and we so treat it. Though reports of this character were held to be admissible in *Roche* v. *Llewellyn Iron Works Co.*, 140 Cal. 563, 74 Pac. 147, and *Sibley* v. *Nason*, 196 Mass. 125, 81 N. E. 887, 12 L. R. A. (N. S.) 1173, 124 Am. St. Rep. 520, 12 Ann. Cas. 938, this one was inadmissible. If it was evidence at all, it was in the nature of an admission, and the question involved is quite like one of agency. Whatever an agent says or does in the execution of his agency is admissible against his principal. *Austin* v. *Chittenden*, 33 Vt. 553. But unless it appears that the agent was then acting within the scope of his agency, his statements or admissions are not so admissible. *Folsom* v. *Underhill*, 36 Vt. 580; *Hardwick S. B. & T. Co.* v. *Drenan*, 72 Vt. 438, 48 Atl. 645; *Taplin & Rowell* v. *Marcy*, 81 Vt. 428, 71 Atl. 72; *Blunt* v. *M. & W. R. R. Co.*, 89 Vt. 152, 94 Atl. 106. Declarations of an officer or agent, not of an official character, or not connected with acts of agency, and not, therefore, a part of the *res gestae*, are mere hearsay and inadmissible. 1 Elliott, Ev. § 254. The foundation for the receipt of this report was not laid. How or why it was made does not appear. The purpose it was expected to serve is not shown. The plaintiff argues that this report was made for the purpose of bringing in the Fidelity Company to defend the suit,—that company having insured the defendant, and that it was made pursuant to a requirement of the policy. But all this is outside the evidence. The fact that counsel informed the court that the American Fidelity Company was an insurer of the defendant did not afford evidence of that fact before the jury, and does not aid the plaintiff in her present claim. It is true that Mr. Hooker testified that he made the report as a part of his duties as manager; but this was subject to objection and exception. The fact stated obviously depended upon other facts not in evidence and was a conclusion drawn by the witness therefrom. All he could lawfully do was to state the facts and let the jury determine his authority in the matter. The official character of the report was, therefore, unproved and it stood as a mere personal statement, inadmissible, because hearsay.

Moreover, the only statement contained in it of any consequence in the case is that the insulation of the cord was "worn off" about a quarter of an inch just above the socket. If Mr. Hooker had merely stated that the insulation was found to be gone for the distance specified the whole paper would have been harmless, for all agreed that such was the fact. But there were two theories as to how this happened: The plaintiff claimed that it was worn off by the use of the lamp, and the defendant claimed it was burned off at the time of the accident. The statement in the report corroborated the plaintiff's theory. But no one knew how this was. It was all a matter of opinion. And Mr. Hooker's statement in the report was merely his opinion or inference regarding it. It is one of the requisites of the rule, that in order for an agent to bind his principal by a statement or admission, his declaration must be one of fact. His opinions, inferences, conclusions, and judgment are, ordinarily, to be rejected. 2 Chamb. Ev. § 1342; *Boston & Maine Railroad* v. *Ordway,* 140 Mass. 510, 5 N. E. 627; *Ohio & Miss. R. R. Co.* v. *Stein,* 133 Ind. 243, 31 N. E. 180, 32 N. E. 831, 19 L. R. A. 733; *Mustain* v. *Williams,* 7 Ky. Law Rep. 828; *Warner* v. *Maine Central R. R. Co.,* 111 Me. 149, 88 Atl. 403, 47 L. R. A. (N. S.) 830; *American T. & L. Co.* v. *Baker-Whiteley Coal Co.,* 111 Md. 504, 75 Atl. 341. Any exception that there may be to this rule is not involved in this case. Nor does the fact that this statement is in form an assertion of fact save it; for the record shows that it could not be anything more than an inference from facts observed, or stated by others, or both. And, too, it was a conclusion as to the cause of a certain result, which is generally to be rejected. 17 Cyc. 210; *Chicago* v. *Powers,* 117 Ill. App. 453.

It was also error to allow Mr. Hooker to testify that he knew no reason why Spinney should regard it as dangerous to take hold of the cord just above the socket. The question was not what the witness knew or thought about it, but what the facts were. He could properly describe the observable physical condition, from which the jury could determine what Spinney saw or should have seen; but his opinion as to what Spinney should have regarded as dangerous was not admissible.

There was no error in allowing McGillivray, an expert electrician, to testify in regard to the different ways in which a ground could be produced. Nor was it error to allow Underwood, another expert, to testify that unless there was a ground,

a person would not get a harmful shock by touching the bare wires. This evidence was clearly admissible on the question of the degree of caution which the law required of the employer who asked his men to work in such surroundings. To be sure, the ground was not set up as the basis of recovery; it was the faulty insulation that the action was predicated upon. But the latter would have been harmless, had not the former existed. And if grounds were so easily caused as the evidence indicated, and created such deadly perils as the witnesses testified to, greater caution was required of the defendant to inspect and repair the insulation on the cord in question.

The evidence given by Mr. Hooker regarding the precautions taken by the defendant to prevent grounds was admissible. Here again the defendant insists that the error in receiving this evidence lies in the fact that the plaintiff does not declare upon the ground as the negligence sued for. But for the reason above stated, the defendant's position is untenable. *Parker* v. *B. & M. Railroad*, 84 Vt. at p. 341, 79 Atl. 865. And most clearly his testimony that no precautions were taken by the defendant to see that the insulation on the wires was well preserved was admissible, for this was most likely the very omission which caused the accident, and in and of itself afforded a basis of recovery.

Equally without merit is the exception to Underwood's testimony to the effect that moving the lamp from place to place would cause the insulation just above the socket to break away. The objection is that this is not a subject of expert testimony, and that there was no evidence that this lamp was moved from one place to another. We think the witness' technical training and his knowledge regarding the insulating material gave him the right to speak as an expert on this subject. The other claim is wholly unfounded. For, even if we concede that the record does not show that Spinney moved the lamp from place to place as he worked around the cupola—a very natural if not necessary thing to do—the evidence unmistakably shows that every time the cupola was finished the cord was coiled up and hung on a peg until it was again needed. This handling would have a tendency to cause the result specified and was doubtless in the mind of the witness when he so testified.

Mrs. Spinney was a witness in her own behalf, and was asked if Spinney knew anything about electricity, and replied that he did not. After the answer was given, objection was

made and exception allowed. The plaintiff argues that the objection came too late. But we think from the transcript that the court below treated it as seasonable. However that may be, we deem it best, in view of the fact that a retrial is to be had, to say that this testimony was inadmissible. *McCarthy's Admr.* v. *Northfield,* 89 Vt. 99, 94 Atl. 298.

Mrs. Spinney and certain other witnesses were allowed to testify that Spinney talked with them about the dangers of his employment and though he mentioned other hazards he made no mention of dangers from electricity and to give other testimony calculated to show that he was ignorant of these. To this line of testimony the defendant excepted. It was properly received. It came within the holding in *Barney's Adm'x* v. *Quaker Oats Co.,* 85 Vt. 372, 82 Atl. 113, the inquiries evidently being framed with that case fresh in mind.

At the close of the evidence, the defendant moved for a verdict on the usual grounds in such cases, and excepted when this action was overruled.

The first claim under this motion is that there is no evidence in the record tending to show that the defendant was guilty of the neglect of any duty owed Spinney proximately resulting in his injury. This claim cannot be sustained. The record presents a typical case for the application of the doctrine of *res ipsa loquitur.* It fulfills every requirement of the generally approved definition: "When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." *Scott* v. *London Docks Co.,* 2 H. & C. 596. When the plaintiff gave evidence tending to show that Spinney met his death by use of the electric lamp, she made a *prima facie* case of negligence. The accident itself was *prima facie* evidence that the defendant was to blame for it. *Drown* v. *N. E. Tel. & Tel. Co.,* 80 Vt. 1, 66 Atl. 801. Though the case was of an entirely different kind, the reasoning of *Parker* v. *B. & M. Railroad,* 84 Vt. 329, 79 Atl. 865, is applicable: "But the defendant says that * * * * * negligence must be proved and cannot be presumed; and so it must; and it was proved, *prima facie,* by proving the fact of derailment * * * *." So here the negligence is proved far enough to make a jury case by

proof that the electricity escaped. This is generally, if not universally so held, as is shown by the long list of cases cited on the plaintiff's brief, which are applicable here though the relations of the parties are not the same. The subtle and deadly character of the agency used makes it especially appropriate that this doctrine should be strictly applied to cases involving injuries, resulting from escaping electricity. 9 R. C. L. 1221. Moreover, there was other evidence of negligence. It appeared that after the accident, the wires were found to be bare just above the socket, and there was evidence showing that the tendency was for the insulation to break away at this point. The argument that there was nothing to show that this condition existed before the accident, or that it had existed for so long a time that the defendant ought to have discovered it is unwarranted. It would naturally take some time for the insulation to wholly disappear at the point of wear, and the extent to which it had worn away, together with the evidence that slight shocks had been previously received from this lamp, was enough to carry the case to the jury on this question. *Cross* v. *Pass. Fiber Leather Co.*, 90 Vt. 397, 98 Atl. 1010.

In view of the character of the agency employed, and the gravity of the consequences likely to result from inattention and neglect, it was the duty of the defendant to exercise constant and active vigilance of a searching character to keep this apparatus safe. It was for the jury to say whether such inspection as this duty required would have discovered this defect in the cord. It is urged that the ground, and not the faulty insulation was the proximate cause of the accident. We cannot agree. The lack of insulation was a proximate cause, if not the only one,— for it is well settled that there may be more than one proximate cause concurring to produce the result. 29 Cyc. 497; Note 130 Am. St. Rep. 250; *Blanchard* v. *Vt. Shade Roller Co.*, 84 Vt. 442, 79 Atl. 911. In causal relation it stood next to the effect (3 Bouv. L. Dict. [Rawle's 3rd Rev.] 2762), and was a *causa sine qua non*. *Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vt. 288, 52 Atl. 531, 93 Am. St. Rep. 889; *Blanchard* v. *Vt. Shade Roller Co.*, 84 Vt. 442, 79 Atl. 911; *Dailey* v. *Swift & Co.*, 86 Vt. 189, 84 Atl. 603.

Nor can it be said that there was no evidence of non-assumption of risk. Spinney's previous employments were testified to by the plaintiff and were of a character tending to show that he

could have acquired no knowledge of electricity and its dangers. He had never had any experience with electric lights, even, until he engaged with the defendant.   His duties in the foundry would afford no means of acquiring any knowledge of electricity, or how it should be handled to avoid its dangers.   And there was other evidence, as we have already seen, warranting the inference that he did not know that the lamp was likely to become dangerous.   While testimony of the kind last referred to is not altogether satisfactory, the necessities of these cases are such as to require some liberality of treatment in this regard, and we do not hesitate to apply the doctrine of the Quaker Oats case to the one in hand.   To be sure, he had been warned to report any trouble or defects he might observe, but there was nothing in this to charge him with notice of this particular defect or its dangers.

So, too, the case was for the jury on the question of contributory negligence.   The evidence tended to show that Spinney, wet as he was and so in the most favorable condition possible for injury by escaping current, went about his work as usual, wholly unconscious of the deadly peril he was incurring; that having prepared his clay to plaster around the slag-pipe, he reached up to turn on the light, and thus received the fatal shock.   In the absence of anything charging him with notice of the dangerous conditions that might exist, this was some evidence of due care on his part.

*Judgment reversed and cause remanded.*