# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT.

CHAUNCEY DROWN *v.* NEW ENGLAND TELEPHONE AND TELE-
GRAPH CO. AND CONSOLIDATED LIGHTING CO.

October Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, HASELTON, and POWERS, JJ.
Opinion filed May 10, 1907.

*Tort Feasors—Joint and Several Liability—Negligence—Elec-
tricity—Liability for Injuries—Care Required—Telephone
Companies—Master and Servant—Injuries to Servant—
Assumption of Risk and Contributory Negligence—Plead-
ing—Required Averment Implied.*

Liability as joint tort feasors may arise from unintentional as well as
from intentional wrongs.

It is not necessary to liability as joint tort feasors that there should
have been "actual concert" of action as distinguished from "passive
concert," nor "actual community" of design as distinguished from
"passive community."

Where two persons owe to a third person separate duties, although
differentiated by the relations they severally sustain to him, but
primary and not secondary as between themselves, and each
neglects to perform his duty, though with neither *actual* concert
of action nor community of design, and their neglects concur to
produce a single injury that would not have happened without such

concurrence, each is liable for the whole damage, and they may be sued jointly or severally at the election of the party injured.

A pleader need not affirmatively allege what is necessarily implied in what he does allege.

Where the declaration alleges that defendant placed and maintained its electric wires in such close proximity to the top of a telephone pole on which plaintiff had to work that he was injured by the current, such injury is *prima facie* evidence that defendant is liable therefor, and as it is an irresistible inference from what is alleged that electricity escaped in consequence of imperfect insulation, that fact need not be affirmatively alleged.

Where it appears that defendant has *prima facie* violated its duty to plaintiff and thereby injured him, defendant is liable unless plaintiff contributed to the accident by his own negligence, or voluntarily encountered the danger after he actually or presumably knew and comprehended it.

Mere knowledge of a risk does not necessarily involve consent thereto, for that would be saying *scienti non fit injuria;* whereas the maxim is, *"volenti non fit injuria."*

A telephone company as much owes its lineman the duty to remedy a dangerous condition of its lines caused by the proximity of another company's electric wires, as though it had itself created that condition.

The danger to a telephone lineman incident to the proximity of electric wires belonging to another company is an extraordinary risk, and was not assumed by him unless either he knew and comprehended it, or it was so plainly observable that he would be taken to have known and comprehended it.

*Sias* v. *Consolidated Lighting Co.*, 73 Vt. 35, and *McKane* v. *Marr & Gordon*, 77 Vt. 7, distinguished; and *Morrisette* v. *Canadian Pacific Ry Co.* followed.

Where a telephone lineman, injured by an electric current while working at the top of a pole in close proximity to a line of electric wires belonging to another company, had never before seen anybody working thereon, and had never been told, and did not know, that it was in dangerous proximity to the electric wires, the danger was not so plainly observable that he can be said, as matter of law, to have assumed the risk, nor to have been guilty of contributory negligence.

It is not decided whether there is any difference between assumption_ of risk and contributory negligence.

CASE for negligence, Orleans County. Heard at Chambers in vacation after March Term, 1906, *Watson, J.*, presiding, on defendants' several demurrers to the declaration. Demurrers overruled, declaration adjudged sufficient. The defendants excepted. Cause passed to the Supreme Court before trial on the merits. The opinion fully states the case.

*Henry W. Dunn* for the New England Telephone & Telegraph Co.

It was in cases of *intentional* wrongs that the law of joint tort feasors was formulated, and after the analogy of the law as to joint contractors, actual concert of action and community of design was required to effect joint liability for a tort. *Adams v. Hall,* 2 Vt. 9; *Stoughton v. Mott,* 15 Vt. 162; *Wall v. Osborn,* 12 Wend. 39; *Williams v. Sheldon,* 10 Wend. 654; *Nicoll v. Glennie,* 1 Maule & Sel. 588; Cooley, Torts, 133; *Atkin v. Slater,* 1 Car. & K. 356; Dicey, Parties, 436; *Bonte v. Postel,* 109 Ky. 64, 51 L. R. A. 187; *Little etc. Co. v. Richards,* 57 Pa. St. 142; *Bard v. Yohn,* 26 Pa. St. 482; *Guille v. Swan,* 19 Johns. 381.

The subsequent great number of accident cases based upon negligence, resulting from the introduction of railroad and street railway companies and other corporate enterprises, presented a wholly new class of questions. Some courts have held to the old test, treating the defendants as joint wrongdoers only when the negligence of all was connected with some common enterprise, or consisted in the neglect of a joint duty. *Butler v. Ashworth,* 110 Cal. 614; *Smith v. Day,* 39 Ore. 531; *Weisenberg v. Winneconne,* 56 Wis. 667; *Oakes v. Spaulding,* 40 Vt. 347.

Other courts go to the other extreme and hold negligent defendants jointly liable in all cases where the negligence of all has contributed to the same injury to the plaintiff.

But where, as here, the duties that the joint defendants are alleged to have violated are wholly different in character; where the defendants stand in wholly different relations to the plaintiff; where the defences available to them are distinct,

based upon wholly different principles, the danger of confusing the jury with evidence and instructions applicable to one defendant and not to another, and the resulting risk of injustice either to the plaintiff or to some or all of the defendants, constitute a sufficient objection to the joinder of such causes of action. *Mooney* v. *Edison Elec. etc. Co.*, 185 Mass. 547; *Fletcher* v. *B. & M. R. R. Co.*, 187 Mass. 463.

The risk of the wire was obvious and hence assumed by plaintiff. The defendants had a right to assume that warning was unnecessary. *LaFlam* v. *Missisquoi Pulp Co.*, 74 Vt. 125; *Meehan* v. *Holyoke St. Ry. Co.*, 186 Mass. 511; *Miss. River Logging Co.* v. *Schneider*, 74 Fed. 195; *Junior* v. *Elec. Lt. & Power Co.*, 127 Mo. 79; *Atlas Engine Works* v. *Randall*, 100 Ind. 293; *Big Creek Stone Co.* v. *Wolf*, 138 Ind. 496; *Skinner* v. *C. V. Ry. Co.*, 73 Vt. 336; *Williamson* v. *Sheldon Marble Co.*, 66 Vt. 427; *Latremouille* v. *Bennington etc. Co.*, 63 Vt. 336; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Anderson* v. *Inland etc. Co.*, 19 Wash. 575; 4 Thompson, Comm. Negl. 2d Ed. §4609; *Dumas* v. *Stone*, 65 Vt. 442; *Kilpatrick* v. *Grand Trunk Ry.*, 74 Vt. 288; *Foley* v. *Jersey City Elec. Light Co.*, 54 N. J. L. 411; *Lamotte* v. *Boyce*, 105 Mich. 545; *Ragon* v. *Toledo etc. Co.*, 97 Mich. 265; *Texas, etc. Co.* v. *Rogers*, 57 Fed. 378; *Kennedy* v. *Hingham Cordage Co.*, 168 Mass. 278; *McIsaac* v. *Northampton Elec. Ltg. Co.*, 172 Mass. 89; *Windover* v. *Troy City Ry. Co.*, 4 N. Y. App. Div. 202; *Denver Tramway Co.* v. *Nesbit*, 22 Colo. 408; *Louisville etc. Co.* v. *Corps*, 124 Ind. 427; *Jergenson* v. *Smith*, 32 Minn. 79; *Jennings* v. *Tacoma etc. Co.*, 7 Wash. 275.

Plaintiff was guilty of contributory negligence. If he had looked he could have seen the danger. *Law* v. *Central Dist. etc. Co.*, 140 Fed. 558; *Moore* v. *East Tenn. etc. Co.*, 142 Fed. 965; *Columbus R. R. Co.* v. *Dorsey*, 119 Ga. 363; *Whelton* v. *West End etc. Co.*, 172 Mass. 555.

*Hunton & Stickney* for the Consolidated Lighting Co.

Plaintiff must be confined to proof of the negligence alleged in his declaration, which is only that the Consolidated Lighting Co. placed its wires above the wires of the Telephone Co. and within twenty-seven inches thereof. Danger arises only when, because of defective insulation, electricity escapes, and proof of

the proximity of the wires of the two defendants, without other evidence of the cause of the injury, is not sufficient to show the Consolidated Lighting Co. guilty of actionable negligence. Keasby on Electric Wires §250.

The duty arising from the contractual relations between master and servant did not exist between plaintiff and the Consolidated Lighting Co. That defendant could be liable to plaintiff only for injury caused by its negligence, when plaintiff was in the exercise of ordinary care. *Carr* v. *Electric Co.*, 70 N. H. 308; *Bergin* v. *Southern etc. Co.* 70 Conn. 54, 67.

The question is whether the injury which followed the act or omission complained of, namely, the proximity of the wires, was the natural and probable consequence of such proximity in the sense that a prudent man ought to have foreseen it. *Morrisette* v. *R. R.*, 74 Vt. 232, 242; *Corbin* v. *R. R.*, 78 Vt. 458. But the close proximity of lighting wires and other electric wires is known to every one, it is a matter of common observation. As between his employer, the New England Telephone & Telegraph Co., and himself, plaintiff undertook his employment with the knowledge of the existence of such dangers, and was bound to exercise care to avoid the consequences thereof. *Junior* v. *The Missouri etc. Co.*, 127 Mo. 79; *Dixon* v. *West. Union Tel. Co.*, 68 Fed. 630.

*W. M. Wright, Frank D. Thompson,* and *J. W. Redmond* for the plaintiff.

The Consolidated Lighting Company is clearly liable. The duty of electric companies, which maintain their lines in the streets, towards the public generally, and persons lawfully using the streets, and the duty of such companies towards those persons whose legal duties bring them in close proximity to their electric wires, has frequently been discussed by the courts, and the rule is, that electric companies are bound to use reasonable care in the construction and maintenance of their lines and apparatus and will be responsible for any conduct falling short of that standard; that the care varies with the danger which will be incurred by negligence; that in cases where the wires carry a strong current of electricity dangerous to human life, and the result of negligence might be exposure to death or most serious accidents, then "reasonable care" means the highest

degree of care possible in the circumstances.  *Clements* v. *Louisiana Electric Light Co.*, 44 La. Ann. 692; *Giraudi* v. *Electric etc. Co.*, 107 Cal. 120; *Ennis* v. *Gray*, 87 Hun. 355; *Haynes* v. *Raleigh Gas Co.*, 114 No. Car. 203; *City Electric Ry. Co.* v. *Conery*, 61 Ark. 381; *Uggla* v. *West End etc. Co.*, 160 Mass. 351; *Huber* v. *LaCrosse City Ry. Co.*, 92 Wis. 636, 53 Am. St. Rep. 940; *Rowe* v. *Taylorville Electric Co.*, 17 Am. Neg. Rep. 215; *Perham* v. *Portland Electric Co.*, 33 Ore. 451, 72 Am. St. Rep. 730; *Snyder* v. *Wheeling Electrical Co.*, 43 W. Va. 661, 64 Am. St. Rep. 922; *Brown* v. *Edison Electric Ill. Co.*, 90 Md. 400, 78 A. St. Rep. 442; *Fitzgerald* v. *Edison Electric etc. Co.*, 200 Pa. St. 540, 86 Am. St. Rep. 732; *Mitchell* v. *Raleigh Electric Co.*, 129 N. C. 166, 85 Am. St. Rep. 735; *McAdam* v. *Central Railway etc. Co.*, (Conn.) 35 Atl. 341; *Reagan* v. *Boston Electric Light Co.*, 167 Mass. 406, 45 N. E. 743; *McLaughlin* v. *Louisville etc., Co.*, 18 Ky. Law. Rep. 693; *Illingsworth* v. *Boston Electric etc. Co.*, 161 Mass. 583, 37 N. E. 778; *Anderson* v. *Jersey City etc. Co.*, 63 N. J. L. 387, 43 Atl. 654; *Neward Electric etc. Co.* v. *Garden*, 78 Fed. 74; *Fassett* v. *Town of Roxbury*, 55 Vt. 552; *McGovern* v. *Smith & Hays*, 73 Vt. 52.

Again, the defendant, Consolidated Lighting Company, owed the plaintiff the duty to use the greatest care in the construction and maintenance of its electrical line.  The plaintiff, while in the proper discharge of his duties as a lineman, came in contact with said defendant's electrical line, and was injured. Contributory negligence on the part of the plaintiff is expressly negatived.  The law, therefore, presumes that the accident arose from the negligence of the Consolidated Lighting Company in the construction and maintenance of its said electrical line, *res ipsa loquitur.*   *Houston* v. *Brush*, 66 Vt. 331; *Western Union Tel. Co.* v. *State*, 82 Md. 293, 51 Am. St. Rep. 464; *Judson* v. *Giant Powder Co.*, 107 Cal. 549, 48 Am. St. Rep. 146.

The New England Telephone & Telegraph Company is also liable.  It is elementary that the master not only personally owes to his servant the duty of using ordinary care and diligence to provide a reasonably safe place in which to work, but he is also bound to make a reasonably careful inspection of the premises, machinery, tools and appliances which he provides for the use of his servants, from time to time, to the end that they shall not be used by his servants after they become de-

fective in such a sense as to be dangerous.  4 Thompson, Neg. §3786; *Dumas* v. *Stone,* 65 Vt. 442; *McGuire* v. *Bell Telephone Co.,* 167 N. Y. 208, 52 L. R. A. 437; *Hammond Co.* v. *Mason,* 12 Ind. App. 469, 40 N. E. 642; *Comben* v. *Belleville Stone Co.,* 59 N. J. L. 226, 36 Atl. 473.

And it is no defence that the dangerous condition was created by the act of a stranger if the master had reasonable cause to know of the danger which was threatened, for a considerable time before the servant received his injury.  *Doyle* v. *Toledo etc. Co.* (Mich.) 54 L. R. A. 461; *Erslew* v. *New Orleans etc. Co.* 49 La. Ann. 86, 21 S. E. 153; *Chicago etc. Co.* v. *Russell,* 91 Ill. 298, 33 Am. Rep. 54; *Southern P. Co.* v. *Lafferty,* 57 Fed. 536, 6 C. C. A. 474; *Texas etc. Co.* v. *Hohn,* 1 Tex. Civ. App. 36; *Burnes* v. *Kansas etc. Co.,* 129 Mo. 41; *Knahtla* v. *Oregon etc. Co.,* 21 Ore. 136; *Bartow* v. *Iowa Telephone Co.,* 17 Am. Neg. Rep. 502; Labatt on Master and Servant, §171; *Brown* v. *Town of Swanton,* 69 Vt. 53; *Dufur* v. *B. & M. R. R. Co.,* 75 Vt. 165.

The defendants are properly joined.  Though the parties act independently, and their acts of negligence are separate and independent, if those acts concur in causing a single injury to a third person, and it is impossible to determine in what proportion each contributes to the injury, both parties are joint tort feasors and are liable to the person injured, either jointly or severally.  *Peckham* v. *Burlington,* Brayt. 134; 15 Enc. of Pl. & Pr. 558; Deering on Neg., §395; *Matthews* v. *Delaware etc. Co.,* 56 N. J. L. 34; *Colegrove* v. *New York etc. Co.,* 20 N. Y. 492, 75 Am. Dec. 418; *Cuddy* v. *Horn,* 46 Mich. 596, 41 Am. Rep. 178; *Slater* v. *Mercereau,* 64 N. Y. 138; *Wabash etc. Co.* v. *Shacklet,* 105 Ill. 364, 44 Am. Rep. 791; *Consolidated Ice Machine Co.* v. *Keifer,* 134 Ill. 481, 23 Am. St. Rep. 688; *Village of Carterville* v. *Cook,* 129 Ill. 152, 16 Am. St. Rep. 248; *Electric Railway Co.* v. *Shelton,* 89 Tenn. 423, 24 Am. St. Rep. 614; *City Electric etc. Co.* v. *Conery,* 61 Ark. 381, 54 Am. St. Rep. 262; *McKay* v. *Southern Bell Tel. Co.,* 111 Ala. 337, 56 Am. St. Rep. 59; *Matthews* v. *Seaboard Air Line Ry.,* 67 So. Car. 449, 65 L. R. A. 286.

Again, if the defendants are misjoined, the misjoinder cannot be taken advantage of by demurrer.  Since actions *ex delicto* are joint and several, a joint liability need not be proved, and,

consequently, a misjoinder of defendants will not defeat a recovery against any or either proved guilty. 15 Enc. of Pl. & Pr. 583; 1 Chitty, Pleadings, (14th Am. Ed.) 86; 3 Addison, Torts, (Wood's Ed.) § 1321; *Allen* v. *Craig*, 13 N. J. L. 294; *Keer* v. *Oliver*, 61 N. J. L. 154; Dicey, Parties to Actions, (Truman's Notes), Rule 118, p. 530.

ROWELL, C. J.  This is case for negligence.  The declaration contains two counts, and is demurred to by both defendants. The first count alleges that before and at the time in question the defendant, The New England Telephone & Telegraph Company, owned and operated a telephone line from Williamstown to Graniteville; that one of the poles of that line stood at the junction of two highways near Graniteville, near the top of which were two cross pieces to which the wires were fastened; that in order to attach the wires, and to repair them, it was necessary to climb the pole and work at the top of it; that before and at the time, in question the other defendant, The Consolidated Lighting Company, was engaged in generating and selling electricity for artificial light, heat, and power; that after the construction of the telephone line, and before the time in question, the Lighting Company constructed an electrical line from Barre to Graniteville consisting of three wires strung on poles, for the purpose of transmitting a powerful current of electricity, dangerous to human life; that the poles of the electrical line were placed on the same side of the highway from said junction to Graniteville as the telephone poles, and for the greater part of the way the electrical wires were strung and maintained above and directly over the poles and wires of the telephone line, and were constructed and maintained directly over the telephone pole at the junction of said highways.

The count further alleges that it was the duty of the Lighting Company so to construct and maintain its line as not to endanger the safety of the Telephone Company's servants while on the poles of its line, but that the Lighting Company, disregarding its duty in this behalf, so carelessly and negligently constructed and maintained its line that the wires thereof were only about twenty-seven inches from the top of the telephone pole standing at the junction of said highways, thereby greatly

endangering the safety of the Telephone Company's servants who had to work at the top of said pole.

The count further alleges that at the time in question the plaintiff was in the service of the Telephone Company as a lineman, and that as such it became and was his duty to climb said pole for the purpose of attaching wires to one of the cross pieces, and that it was the duty of the Telephone Company to furnish him a reasonably safe place in which to do that work, but that the top of said pole was an unsafe place "because of the close proximity of the electrical wires," as said company had reason to know, and that it was the duty of said company to render said pole a safe place, either by removing it, or by compelling the Lighting Company to remove its wires, neither of which it did, but suffered and permitted said pole and the electrical wires thus to remain in dangerous proximity to each other.

The count further alleges that at the time in question said last mentioned wires were charged with a dangerous current of electricity, and that the plaintiff was wholly ignorant of the close proximity of said wires to said pole, and was wholly ignorant that said pole was an unsafe place to work, and that while at work at the top thereof, fastening wires to one of the cross pieces, without fault or negligence on his part, but solely in consequence of the negligence of the Lighting Company in constructing and maintaining its line as aforesaid, and of the negligence of the Telephone Company in suffering said pole and said electrical wires to remain in such close proximity to each other, he came in contact with said wires, and was burned and injured.

The second count is essentially like the first, except that it omits the allegation that the Telephone Company had reason to know that the top of said pole was an unsafe place to work, and charges the duty of the defendants as a joint duty, and its breach as a joint breach.

It is objected that the declaration is bad for misjoinder of defendants and causes of action, and urged that the rule of the common law—formulated when almost all the cases of tort were for intentional wrongs—that tort feasors cannot be joined unless there was concert of action or common design, is most logically applicable to negligence cases also, which have so

greatly increased since the introduction of modern utilities, and that a broader rule involves a very distinct departure from the original common-law conception of joint tort feasors; that when two defendants act independently of each other, but their relations to the plaintiff are similar, so that the duties they have violated are of a similar character, and the defences available to them rest upon the same legal principles, and in general the standard of care and the tests of negligence as against both are substantially the same,—it might occasion no serious practical difficulty to try both cases in one action. But that when, as here, the duties that the two defendants are alleged to have violated are entirely different in character; when they stand in entirely different relations to the plaintiff; when the defences available to them are distinct, and based upon entirely different legal principles,—the danger of confusing the jury with evidence and instructions applicable to one case and not to the other, and the resulting risk of injustice to the plaintiff or to one or both of the defendants,—constitute a sufficient objection, both theoretical and practical, to the joinder of two such causes of action in a single count of a single declaration; that the objection of duplicity in common-law pleadings, and of multifariousness in equity, applies with equal force to such a misjoinder; and the fact that the plaintiff's damage is the same in both cases, tends only to increase the confusion.

It is true that the common-law rule for joining tort feasors, when originally formulated, was based upon the conception of concert of action or common design. And it may be true, as claimed, that this conception resulted from the fact that then almost all of the tort cases were for intentional wrongs. But the rule is not confined to intentional wrongs, but embraces unintentional wrongs as well, for all agree that it embraces cases of wrongful neglect of joint duties. The difference of opinion comes when you have wrongful neglect of separate duties. But even here that difference is not so marked when the duties are similar as it is when they are dissimilar. In the latter case it is more strongly urged that to impose a joint liability would be an unwarrantable departure from the rule. But it cannot be said to be a departure from the rule to apply it to cases involving elements generically the same though specifically different, that is, elements that give you concert of action

or common design within the meaning of the rule. Now the rule does not require actual concert as distinguished from passive concert, nor actual community as distinguished from passive community; if it does, the wrongful neglect of joint duties would not be within it, for there you have only passive concert or passive community.

Although in respect of negligent injuries there is considerable conflict of opinion as to what constitutes joint liability, yet we think that the weight of authority as well as the principle of the rule sustain this proposition, namely: that when two owe to another separate duties, though differentiated by the relations they severally sustain to him, but primary and not secondary as between themselves, and each neglects to perform his duty, with no actual concert of action nor community of design between them, and their neglects concur to produce a single injury that would not have happened without such concurrence, so that each is a proximate and an efficient cause,—the injury may be attributed to either or both of the causes, and each of the wrong-doers is liable for the whole damage, and therefore they may be sued jointly or severally at the election of the party injured.

This proposition is well exemplified by the numerous cases holding that when a passenger on a railroad train is injured by a collision of his train with the train of another road, caused by the concurrent negligence of both roads, the carrier and the non-carrier are jointly liable. Here the duties are different because of the different relation that each road sustains to the passenger; still, as the breach of their duties· concurred in producing the injury, which would not have happened without such concurrence, they are held jointly liable. There are numerous electrical cases essentially like the one at-bar in their facts, in which the same thing is held. There are, however, cases that hold the other way; but it is unnecessary to refer to the cases on either side, as they are largely cited in the briefs. Judge Cooley favors this proposition. Cooley, Torts, 3d Ed. 246, 247. And the case in hand comes within it, for by wrongfully neglecting to remedy the dangerous condition complained of, which either could have done, the defendants passively concurred in maintaining and taking the risk of it; and as their neglects in this behalf concurred in producing the plaintiff's

injury, which would not have happened without such concurrence, they passively and by community of wrong participated in its infliction, and therefore are jointly liable for it.

We are not much impressed by the suggestion that the danger of confusing the jury and thereby of doing injustice to some of the parties constitutes a sufficient objection to the joinder, for we do not think that such danger exists to any embarrassing extent. It is true that some courts lay stress upon that, but the more part take no notice of it.

The sole negligence alleged against the Lighting Company is, that it placed and maintained its wires in the dangerous proximity of twenty-seven inches above the top of the telephone pole on which the plaintiff was working at the time of his injury. The company contends that this alone does not make a case of actionable negligence against it; that the question arises whether the injury was the natural and probable consequence of the negligence alleged, in the sense that a prudent man ought to have foreseen it; that that question cannot be answered in favor of the plaintiff on that allegation, for that the danger comes only when electricity escapes by reason of defective insulation, so that proof of the proximity alleged, without other evidence explaining how the injury occurred, would not be sufficient to show the company guilty of actionable negligence; that the cases uniformly set forth as the proximate cause of injuries arising from the escape of electricity, a defect or break of the insulation, and that no such defect is here alleged; that you cannot answer, *res ipsa loquiter,* for although it may be an irresistible inference that electricity did escape by reason of improper insulation, yet it does not follow from that alone that the company is liable, for it may not have been to blame for it, and if it was, the plaintiff may have known of the defect as well as the company; and besides, the declaration excludes any claim of negligence on the part of the company in respect of defective or improper insulation or in any other respect except only in placing and maintaining its wires in the proximity alleged.

It is undoubtedly an irresistible inference from what is alleged, as counsel seem to think, that electricity did escape by reason of imperfect insulation, for otherwise the plaintiff could not have been burned and injured as alleged; and so the injury

speaks for itself to this intent, and is *prima facie* evidence that the company was to blame for it, and guilty of the negligence alleged. This being so, the fact of imperfect insulation, and the escape of electricity by reason of it, sufficiently appear, the rule being that you need not allege what is necessarily implied in what you do allege. Thus, if a man plead that he is heir to such an one, he need not allege that that one is dead, for that is implied, as no one is heir to the living.

Thus it appears that the proximate cause of the injury, as counsel call it, namely, the escape of electricity by reason of imperfect insulation, is not wanting, as claimed, and that the declaration does not exclude all claim of negligence in respect of it; for the doctrine of *res ipsa loquiter* is merely a rule of evidence, and when it is evidence of the negligence alleged, the plaintiff is entitled to the benefit of it.

The suggestion that the plaintiff may have known of the imperfect insulation is no answer to the declaration, for it cannot be said that he did know; and if he did, that alone is not enough, for mere knowledge of a risk does not necessarily involve consent to the risk, for that would be saying *scienti non fit injuria,* whereas the maxim is, *volenti non fit injuria,* which applies between strangers as well as between master and servant. Hence, the company having, *prima facie,* violated its duty to the plaintiff, he must have contributed to the accident by his own negligence, or have voluntarily encountered the danger within the meaning of the maxim; and these are questions of fact, as the case is declared upon. *Thrussell* v. *Handyside,* 20 Q. B. D. 359; *Smith* v. *Baker*, [1891] A. C. 325; *Thomas* v. *Quartermaine,* 18 Q. B. D. 685, 698.

The Telephone Company claims that the declaration is bad (1) because it fails to show negligence on its part; (2) because it shows that the plaintiff assumed the risk; and (3) that he was guilty of contributory negligence.

The reasons relied upon to sustain the claim of failure to show negligence on its part are summarized as follows: (1) that the duty to provide a reasonably safe place is not absolute, but relative, requiring only reasonable care to provide a reasonably safe place in view of the nature of the business and the circumstances of the case; (2) that the nature of the telephone business, and the manner in which as a practical matter

it must be conducted, render it impossible always to avoid the proximity of electric light wires; (3) that the alleged dangerous situation of which the plaintiff complains was not brought about by the company, and does not appear to have been so serious as reasonably to impose upon it the duty of relocating its line; (4) that no lack of warning is relied upon, and it does not appear that warning was not in fact given; (5) that the danger was so obvious that warning was unnecessary; and (6) that it does not appear that the plaintiff's work required him to go within reach of the electric light wires.

But the first two reasons do not show the declaration bad in law. They are only a statement of the character and extent of the company's duty under the law, and of what should be considered in determining whether in fact it performed that duty.

As to the third reason, although the alleged dangerous situation was not brought about by the company in the sense that it actively participated in creating it; yet, if dangerous, it was as much its duty to remedy it as though it had brought it about in the first place; and that it was dangerous, is shown by the declaration.

As to lack of warning not being relied upon, and its not appearing that warning was not given, it must be borne in mind that the danger complained of is the proximity of the electric wires to the top of the pole; and of that danger, the declaration alleges, the plaintiff was wholly ignorant. This, in effect, is a negation of warning, and a reliance upon lack of warning.

As to whether the danger was so obvious that warning was not necessary, is involved in assumption of risk, and will be considered in that connection.

As to its not appearing that plaintiff's work required him to go within reach of the electric light wires, it is sufficient to say that the declaration alleges that it was necessary to work at the top of the pole, and this the demurrer admits, and it appears that the top of the pole was within reach of the electric wires.

As to the assumption of risk. This was not an ordinary risk, and therefore assumed by the plaintiff, but an extraordinary risk, and therefore not assumed by the plaintiff unless he knew and comprehended it, or it was so plainly observable that he will be taken to have known and comprehended it. The declara-

tion alleges that he did not in fact know it, and the question is whether, in the circumstances alleged, the law will impute knowledge to him. We think it will not. It was the duty of the company to see to it that the electric wires were a safe distance from the pole, and the plaintiff had a right to assume that it had performed that duty, and therefore was not bound to exercise care to find out whether it had or not. *Dunbar* v. *The Central Vt. Railway Co.*, 79 Vt. 474, 65 Atl. 528.

The case is not like *Sias* v. *The Consolidated Lighting Co.*, 73 Vt. 35, 50 Atl. 554, for there the duty of inspection rested upon the plaintiff. Nor is it like *McKane* v. *Marr & Gordon*, 77 Vt. 7, 58 Atl. 721, for that was a case of equal knowledge. But here the plaintiff did not know, and was not bound to find out; whereas the company is charged with knowing, because it could have found out by the exercise of proper care. Nor is it like *Chisholm* against this same company, 176 Mass. 125, on which so much reliance is placed, for there the dangerous condition was not due to the defendant's fault, while here it was. Nor yet is it like *Anderson* v. *Inland Telephone & Telegraph Co.*, 19 Wash. 575, 7 Am. Elect. Cas. 725, to which reference is made, for there the risk was regarded as ordinary, and therefore assumed by the plaintiff; while here it is regarded as extraordinary, and therefore not assumed by the plaintiff. Nor like *Carr* v. *Manchester Electric Co.* and *Union Electric Co.*, 70 N. H. 308, 7 Am. Elect. Cas. 746, for there the plaintiff knew the risk, and therefore was held to have assumed it.

The case is more like *Morrisette* v. *Canadian Pacific R. R. Co.*, 74 Vt. 232, 52 Atl. 520. There the plaintiff was swept from the side of a moving freight car by a switch standing near the track. It was contended that the danger was so obvious that he assumed the risk. It appeared that he had worked for the defendant several years as brakeman on different parts of the line, and for several months next before the accident, on the part where it happened, and was acquainted with the sidings there, and knew the location of the switch, and had operated it several times. He had never passed it before on the side of a car, and had never been told and did not know that it was near enough to the track to sweep one from the side of a car. He had never staid by the switch when a car passed it, and had always found the other switches on the road safe. The court

said that although the switch was dangerous only because of its proximity to the track, yet it was impossible to say as matter of law that the danger could be seen and comprehended by mere observation, unaided by measurement, seeing a car pass, or some such thing; that if it could have been, it was fair to assume that some one whose business it was would have discovered and remedied it, for the switch had stood there several years.

So here, much the same thing can be said, for it does not appear that the plaintiff ever worked upon the pole before, or ever saw any one work upon it, or ever was upon it for any purpose; and he never was told, and did not know, that it was in dangerous proximity to the electric wires.   We hold, therefore, here as there, that in the circumstances alleged, the danger was not so plainly observable that the law will say that he knew and comprehended it.   Obviously, fair-minded men might differ about it.   Hence, it must go to the jury.

It is equally clear that it cannot be said as matter of law that the plaintiff was guilty of contributory negligence.   That, also, must go to the jury.   It is not necessary for present purposes to inquire whether there is any difference between assumption of risk and contributory negligence.

*Judgment affirmed and cause remanded.*