LUIGI PETTE'S ADMR. *v.* OLD ENGLISH SLATE QUARRY.

October Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed February 4, 1916.

*Master and Servant—Death of Servant—Negligence—Contributory Negligence—Assumption of Risk—Questions for Jury —Ignorance of Defective Appliance—Delegation of Master's Duty — Evidence — Experts—Competency—Harmless Error—Cross-examination—Pleading—Omission of Material Allegation—Cure by Verdict—Omission of Allegation of Non-assumption of Risk.*

In an action for a quarry laborer's death from a stone falling while being removed from the quarry, owing to an alleged defective chain, *held* that the questions of deceased's negligence and assumption of risk were for the jury, and that the evidence justified the finding of deceased's ignorance of the defective condition of the chain.

In an action for a quarry laborer's death from a falling stone while being removed from a quarry, where it appeared that deceased, in avoiding the falling stone, moved to one side, where he would have been safe if the stone had not been deflected in its descent by a

pin protruding from the side of 'the quarry, whether his conduct was that of a prudent man was for the jury.

The master's duty to his servant to use the care of a prudent man to furnish and maintain reasonably safe instrumentalities is nondelegable, and so where the master instructs a servant to inspect an appliance, and the latter negligently fails therein to the injury of another servant, the master cannot avail himself of the instructions.

Where a witness testified to his experience with chains of various sizes, and that he had observed by comparison the strength of various-sized chains, he was qualified to give his opinion that a half-inch chain is not sufficiently heavy to handle a designated stone.

An objection to the admission of evidence which was not included in the objection made below will not be considered on review.

In an action for a quarry laborer's death, the exclusion of defendant's offered evidence as to the custom practiced by employees, including deceased, was harmless, where it appeared that deceased was killed while complying with the alleged custom.

In an action for a quarry laborer's death from a falling stone while being removed from the quarry, owing to the breaking of the half-inch chain that suspended the stone, where to show that the chain was of insufficient size plaintiff's witness engaged in the same business testified that he used a nine-sixteenth chain for hoisting stone in his quarry, it was error to deny cross-examination as to the conditions under which he used it.

Cross-examination is a right, and though the discretion of the court may largely control it, the right itself must not be infringed.

In a servant's action for negligence, the declaration must allege non-assumption of risk, and, if the omission is not implied in nor inferable from the allegations, a verdict for plaintiff does not cure the defect, otherwise it does; and the allegation of due care does not imply non-assumption of risk.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1914, Rutland County, *Slack*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*T. W. Moloney* and *Walter S. Fenton* for the defendant.

*Phelps & Pratt* and *Lawrence, Lawrence & Stafford* for the plaintiff.

POWERS, J. Luigi Pette, a laborer in the defendant's quarry, was killed by a stone that fell and crushed him. He was at work on a bench in the pit and the stone was being hoisted out of the quarry by a half-inch chain hitched around it. When it was about to pass over the butt of the quarry in its passage along the cable to its destination, the cable sagged so much that the stone struck against the bank; at that instant the chain broke, and the stone in falling struck an iron pin set in the ledge, glanced off to the south and fell upon the intestate. There was evidence fairly and reasonably tending to show that this chain was insufficient in size and strength to handle stones of the size it was then being required to carry; that it was an old chain, had been in use for some time, and that such chains deteriorate with use; that it had been frequently repaired; that an accident befell the cable on which the carrier ran shortly before this accident, and it had been so temporarily repaired that it sagged under a load and this was how the stone happened to strike the butt of the quarry,—whereas if the cable had been in its former condition the stone would have swung clear and passed over the butt without touching it; and that the inspection of the chain by the superintendent was inadequate. It is very plain from this that the question of the defendant's negligence was for the jury.

There was no direct evidence that the intestate was ignorant of the condition of the cable or the insufficiency of the chain, but the circumstances tended strongly to indicate that he was ignorant of these matters, and the jury was fully justified in so finding. If the fault in the chain was its insufficient size, it would require judgment, experience and special knowledge to determine its insufficiency. The approximate weight of the stone to which it was fastened would also be a matter of judgment and experience. The character of the intestate's duties, the short time he had worked in this quarry, the lack of occasion and opportunity on his part of inspecting the chain or the loads put upon it, and the character of the man as shown by the record were circumstances warranting an inference that he was ignorant of the facts referred to. So far as the condition of the cable is concerned, the evidence shows that he was not present when it was injured or repaired and the evidence tended to show that he knew nothing about it. The question of assumption of risk was for the jury. When the stone started up out of the pit, Rossi, the man who

chained it and who was at work on the same bench, called to the intestate to "look out." Thereupon the latter, who was not then near the stone, ran over to the corner of the bench about ten feet away, and when the warning sound indicated that the stone was about to fall, he started toward the west to avoid its hitting him. It is quite apparent that the intestate was far enough to one side of the stone,—one witness put the distance at fifteen feet—that he would have been safe if the stone had not in falling struck the pin and glanced off in his direction. When it did fall he was too late to escape it. That he did not in fact reach a place of safety does not necessarily imply that he did not use due care. *Ingram's Admrx.* v. *Rutland R. Co.*, 89 Vt. 278, 95 Atl. 544. The question is, did he exercise the care of a prudent man? He seasonably sought a place of safety, and had it not been for the glancing of the stone, the place selected would have availed him. It was for the jury to say whether or not his conduct measured up to the prudent man standard.

*Kilroy* v. *Foss*, 161 Mass. 138, 36 N. E. 746 and *Kinney* v. *Corbin*, (Pa.) 19 Atl. 141, cited by the defendant, are not authorities to the contrary. The former involved only the fall of a stone by the breaking of a chain; the plaintiff voluntarily put his foot under the stone and made no attempt to keep out from under it. In the latter case, the plaintiff not only voluntarily went under the stone, but he knew that the chain was considered unsafe. In neither of the cases did any unusual condition, like the bounding of this stone from the pin, appear. It was not error to exclude the testimony as to instructions given by the defendant to Rossi in regard to inspecting the chain. The duty of the master to furnish reasonably safe instrumentalities and to keep them in that condition is non-delegable. If Rossi negligently discharged that duty or omitted it altogether, the shortage was that of the defendant. James Moloney a pit-man of 22 years' experience was improved as a witness and testified in effect that a half-inch chain is not heavy enough to handle a stone the size of the one which is here in question. The defendant objected and excepted to this testimony on the ground that the witness "had made no special observation of this subject." But the witness testified to his experience with chains of various sizes and that he had observed by comparison the strength of various sized chains. This warranted a finding that he was

qualified to give an opinion as to the suitability of a half-inch chain and the ruling was without error.

The defendant also complains that this witness was allowed to state that he did not use a half-inch chain because it is not strong enough, without any showing that the conditions under which he used a chain were at all similar to those in the defendant's quarry. But the transcript shows that the kind of a chain used by the witness was brought out in his cross-examination; and that when on re-direct examination he was asked why he did not use a half-inch chain only a general objection was made that his answer would be incompetent and irrelevant. It was not suggested that there should be a showing of similarity of conditions. So the point now made for the first time is not available.

The defendant was not harmed by the exclusion of evidence as to the custom of the employees, including the intestate, to get out from under a stone when it was hoisted out of the pit. This is just what the intestate did on the occasion of his injury. Proving such a custom would, at best, only tend to show a duty on the part of the intestate to get out from under this stone. He did. So the evidence was immaterial.

Joel Griffith, a quarry foreman, was a witness for the plaintiff. Subject to exception he was allowed to state that he used a 9/16 chain for hoisting stone in his quarry. The defendant does not complain of this, but in cross-examination of this witness the defendant was denied the privilege of asking Griffith how large the blocks were that they took out of that quarry. Of this the defendant now complains. The defendant urged his claim of a right to pursue this inquiry on the ground that it would explain why a larger chain was used in that quarry. To the exclusion of this testimony an exception was saved. The cross-examination was erroneously excluded. Cross-examination is a right, and though it is a matter which the discretion of the court may largely control, the right itself must not be infringed. *State* v. *Plant,* 67 Vt. 454, 32 Atl. 237, 48 Am. St. Rep. 821. The only purpose of the direct evidence of this witness showing that a larger chain was used in his quarry was to show inferentially that the one used by the defendant was too small. But the value of this evidence would depend upon the similarity of conditions; if the loads in the witness' quarry were heavier than those handled in the defendant's quarry, a heavier chain would

of course be required. And without a knowledge of the facts which the defendant sought to bring out the jury might and most likely would accept the evidence as indicating that the defendant's chain was too small for the work. With a knowledge of these facts, the importance of the testimony might seem too slight for consideration.

The defendant moved in arrest of judgment on the ground that the declaration did not negative the intestate's knowledge of the conditions and dangers surrounding him when injured,— in other words did not allege non-assumption of risk. That it was necessary for the plaintiff to allege and prove his ignorance is the settled law of this State. *Brainard* v. *Van Dyke,* 71 Vt. 359, 45 Atl. 758; *Dunbar* v. *Cent. Vt. Ry. Co.,* 79 Vt. 474, 65 Atl. 528; *Hatch* v. *Reynolds' Est.,* 80 Vt. 294, 67 Atl. 816; *McDuffee's Admrx.* v. *B. & M. Railroad,* 81 Vt. 52, 69 Atl. 124; *Barney's Admrx.* v. *Quaker Oats Co.,* 85 Vt. 382, 82 Atl. 113; *Fowlie's Admrx.* v. *McDonald, Cutler & Co.,* 86 Vt. 395, 85 Atl. 692.

It does not necessarily follow, however, that judgment will be arrested for this omission, though it would leave the declaration open to demurrer. Many defects are cured by verdict. The rule as stated by Mr. Sergeant Williams is as follows: "Where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been a fatal objection upon demurrer, yet if the issue joined be such as necessarily required on the trial proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give or the jury would have given the verdict, such defect, imperfection, or omission is cured by the verdict." 1 Saund. 228, n. 1. It is, however, as has been frequently pointed out, only where a fair and reasonable intendment can supply the defect that a verdict cures. If, therefore, a necessary allegation be altogether omitted from a declaration, a verdict will not cure the difficulty. *Jackson* v. *Peskel,* 1 M. & S. 234. In such a case no cause of action is set up, consequently there is no sufficient support for a plaintiff's verdict. This rule has been frequently recognized and approved by this Court. *State* v. *Hodson,* 66 Vt. 134, and cases cited. If no cause of action is alleged, none need be proved, and there is no ground for assuming that it was proved. *Noyes* v. *Parker,* 64 Vt. 379, 24 Atl. 12. "The law of the subject is," says Judge Rowell in *Baker* v. *Sherman,* 73

Vt. 26, 50 Atl. 633, "that if the declaration omits to allege any fact essential to a right of action, and it is not implied in nor inferable from the finding of those that are alleged, a verdict for the plaintiff does not cure the defect." So the exact question is, is the intestate's ignorance implied in or inferable from the facts alleged, all of which must be taken as established? The only allegation pointed out by the plaintiff as inferentially covering the point is the one averring that the intestate was in the exercise of due care, and *Henry* v. *Fitchburgh R. R. Co.,* 65 Vt. 436, 26 Atl. 485, is cited. But the question actually made in that case, as is shown by the opinion, was the question of contributory negligence and not assumption of risk, and the case is not authority here. That one is exercising due care does not necessarily imply that he is ignorant of the dangerous conditions surrounding him. It may well be that he is fully aware and appreciative of the conditions and the dangers. Therefore, the allegation of the one fact does not by implication cover the other. *Louisville, etc., R. Co.* v. *Corps,* 124 Ind. 429, 24 N. E. 1046, 8 L. R. A. 636; *Chicago, etc., Co.* v. *Norman,* 49 Oh. St. 598, 32 N. E. 857. The declaration omits a material allegation that cannot be supplied by inference or reasonable intendment. In accordance with this view it is held that a failure to allege freedom from contributory negligence is not cured. *Eberhart* v. *Reister,* 96 Ind. 478; *Decatur* v. *Simpson,* 115 Ia. 348, 88 N. W. 839. The motion in arrest was improperly overruled.

*Judgment reversed and new trial ordered on terms that the plaintiff pay defendant's costs up to the time of filing a new declaration, and take none during that time if he finally recovers, except for service of the writ and entry of the action. If a new trial is not accepted on these terms, let judgment on the verdict be arrested with costs in this Court and in the court below. Cause remanded.*