SOUTHERN PAC. CO. v. McCREADY et al.
No. 6297.

Circuit Court of Appeals, Ninth Circuit.
March 9, 1931.

Rehearing Denied April 13, 1931.

W. I. Gilbert, of Los Angeles, Cal., for appellant.

Bertrand J. Wellman, of Los Angeles, Cal., for appellee McCready.

Kidd, Schell & Delamer, of Los Angeles, Cal., for appellee Maryland Casualty Co.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

RUDKIN, Circuit Judge.

This case was before this court on a former appeal, where a full statement of the facts as then presented will be found. McCready v. Southern Pac. Co., 26 F.(2d) 569, 570. After reciting the facts on the former appeal, Judge Dietrich stated the questions for decision as follows:

"The questions for consideration therefore are whether the facts as above recited make a prima facie case of actionable negligence, and, if so, whether they disclose such contributory negligence as in law bars recovery."

The first question was answered in the affirmative, the second in the negative, and the judgment of involuntary nonsuit was accordingly reversed and the case remanded for a new trial. Upon a retrial a verdict was returned for the plaintiff, and from the judgment on the verdict this appeal was prosecuted.

Before taking up the assignments of error, it might be well to consider wherein the present record differs from the record on the former appeal, if at all. The appellant contends that it differs in two respects: First, because the construction contract between the appellant and the independent contractor was in evidence on the last trial and not on the former; and, second, because the defense of assumption of risk, withdrawn on the for-

mer trial, was interposed and relied on at the last trial.

The first difference suggested does not in fact exist. When the construction contract was offered in evidence by the appellee, the appellant interposed an objection, and as a result of that objection the offer was expressly limited to the provision of the contract fixing the time for the commencement of the work and the time for its completion. True, the entire contract is found in the record on the present appeal, but it was not read to the jury, nor was it taken to the jury room. The contention that the entire contract was in evidence is therefore without merit; and whether the court below erred in referring to other provisions of the contract not in evidence, in its charge to the jury, will be considered later, as will also the question of assumption of risk.

A witness called by the appellee testified that he represented the appellant while the building in question was under construction and that it was his duty to see that the contractor lived up to specifications and to orders. He further testified that, shortly before the appellee was injured, the construction foreman in charge of the work for the contractor notified him that they were about to take down certain scaffolding and that the proximity of the live wires rendered the work dangerous. For this reason, he was requested to deaden the wires or cut off the electric current, but refused to do so. A general objection was interposed to this testimony on the ground that it was incompetent, irrelevant, and immaterial, hearsay, and no foundation laid. It is now urged that it does not appear that the employee who was thus notified had authority to deaden the wires or cut off the current. We do not think that the general objection thus interposed was sufficient for any purpose. The stock form of objection, incompetent, irrelevant, and immaterial, is too general to raise any question for review in an appellate court unless the testimony is so palpably immaterial that any form of objection is sufficient to challenge the attention of the trial court. Sparf and Hansen v. United States, 156 U. S. 51, 57, 15 S. Ct. 273, 39 L. Ed. 343; Sparks v. Territory of Oklahoma (C. C. A.) 146 F. 371, 374. In any event, whether the agent upon whom the request was made had authority to deaden the wires or cut off the current, or not, his relation to his employer and to the work in hand was such that notice to him was notice to the employer. Confronted with the same testimony on the former appeal, we said:

"Desiring to remove the scaffolding, the contractor's foreman notified representatives of the defendant and sought to have the current temporarily cut off, but his requests were refused; and finally, selecting plaintiff and others of the more experienced workmen, he assigned to them the task of taking down the scaffolding, at the same time giving them appropriate warnings that they should exercise care to avoid injury from the wires."

From that conclusion we see no adequate reason to depart.

There is some contention over the admission of testimony bearing upon the right of the appellant to use or extend the live wires into the uncompleted portion of the building where the appellee and his associates were at work, and over the charge of the court relating to that question, or right. On the former appeal we said:

"But here we do not have the case of a mere invitee in the ordinary sense. As we understand, it is not disputed that, being by virtue of his employment in privity with the contractor, plaintiff's right to be and to work in and about the unfinished unit was of equal dignity to that of his employer, and that the duty of the defendant to refrain from subjecting him to unnecessary peril was as great at least as was its duty in that respect toward the contractor. * * *

"While the defendant was under no affirmative duty to keep the premises safe for the workmen, it was under the duty to refrain from actively creating a danger."

We still adhere to the views there expressed, and, regardless of the abstract right of the appellant to use or occupy the uncompleted portion of the building, we are convinced that there was neither excuse nor justification for extending this deadly agency into the uncompleted portion of the building where men were necessarily employed in the work of dismantling the scaffolding. For these reasons, there was no error in the admission or exclusion of testimony, or in the charge of the court, even if the charge was based on provisions of the contract not in evidence, as claimed.

This brings us to the perplexing question of assumption of risk when applied to the particular facts before the court. As already stated, this defense was withdrawn or abandoned on the former trial, because counsel for appellant was then of opinion that such a defense was not available inasmuch as the relation of master and servant did not exist between the appellant and the appellee. After

the case was remanded, an amended answer was filed combining, in a single paragraph, the defenses of contributory negligence and assumption of risk, and upon the trial the court was requested to instruct the jury that, under a given state of facts, the appellee would be guilty of contributory negligence, and, by another instruction, that under the same identical state of facts he would assume the risk. But the confusion of counsel in this respect is at least excusable, in view of the many conflicting decisions upon the question.

The general principle underlying the doctrine of assumption of risk, as stated by Chief Justice Shaw in Farwell v. Boston & Worcester Ry., 4 Metc. (Mass.) 49, 38 Am. Dec. 339, has very generally been accepted:

"The general rule, resulting from considerations as well of justice as of policy, is, that he who engages in the employment of another for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and in legal presumption, the compensation is adjusted accordingly."

See, also, Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612.

In Narramore v. Cleveland, C., C. & St. L. Ry. Co. (C. C. A.) 96 F. 298, 301, 48 L. R. A. 68, Judge Taft said:

"Assumption of risk is a term of the contract of employment, express or implied from the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk."

If assumption of risk is a term of the contract of employment, express or implied, as stated by Judge Taft, and if the agreement to assume the risk, whether express or implied, is in legal contemplation supported by a consideration, as stated by Chief Justice Shaw, it would seem to follow that there can be no assumption of risk, strictly speaking, where there is no contractual relationship of any kind between the injured party and the party causing the injury, and many of the courts so hold.

Thus, in Chicago, St. P., M. & O. Ry. v. Nelson (C. C. A.) 226 F. 708, 712, the court said:

"Nor was it error to refuse to charge the jury that the decedent had assumed the risk, as that doctrine only applies where the relationship of master and servant exists."

See, also, Cudahy Packing Co. v. Luyben (C. C. A.) 9 F.(2d) 32.

So, in Harvey v. Chas. R. McCormick Lumber Co., 149 Wash. 368, 271 P. 65, 66, an action for personal injuries by the servant of an independent contractor against the contractee, where the withdrawal of the defense of assumption of risk from the injury was assigned as error, the court said:

"It must be remembered that this is not a case arising out of the relationship of master and servant. No contractual relationship of any kind existed between respondent and appellant. Assumption of risk differs from contributory negligence, although in many cases the terms seem to be used somewhat interchangeably. Assumption of risk arises out of contractual relationship, and, there being no contractual relationship existing between the appellant and respondent, the defense of assumption of risk was properly withdrawn from the jury."

To the same effect, see: Chicago & N. W. Ry. Co. v. Prescott (C. C. A.) 59 F. 237, 23 L. R. A. 654; Poole v. American Linseed Co., 119 App. Div. 136, 103 N. Y. S. 1047; Pennsylvania Co. v. Backes, 133 Ill. 255, 24 N. E. 563; B. Shoninger Co. v. Mann, 219 Ill. 242, 76 N. E. 354, 3 L. R. A. (N. S.) 1097; Wilkins v. Water & Light Co., 92 Neb. 513, 138 N. W. 754; Furbeck v. I. Gevurtz & Son, 72 Or. 12, 143 P. 654, 922; Mitchell v. Barton & Co., 126 Wash. 232, 217 P. 993; Roscoe S. & P. Ry. Co. v. Jackson, 60 Tex. Civ. App. 276, 127 S. W. 872; San Angelo Water, Light & Power Co. v. Baugh (Tex. Civ. App.) 270 S. W. 1101; Biskup v. Hoffman, 220 Mo. App. 542, 287 S. W. 865.

But this rule has not been universally recognized. Thus, in Gover v. Central Vermont Ry. Co., 96 Vt. 208, 118 A. 874, 876, the court said:

"It is now generally recognized that there is a distinction between the doctrine of contributory negligence and the doctrine of assumption of risk. Note, 18 Ann. Cas. 960. While this was left an open question in Drown v. New England Tel. & Tel. Co., 80 Vt. 1, 16, 66 A. 801, the existence of such a distinction has come to be recognized by this court. Carleton v. Fairbanks & Co., 88 Vt. 537, 548, 93 A. 462; Pette's Adm'r v. Old English Slate Quarry, 90 Vt. 87, 93, 96 A. 596; Robey v. Boston & Maine R. R., 91 Vt. 386, 100 A. 925. The occasion for considering the distinction so seldom arises, except with respect to the relation of master and servant, that it seems to have been quite gen-

erally understood that the doctrine of assumption of risk is confined to cases arising out of that relation. Some courts hold that the doctrine has no application in actions for negligence where the parties do not occupy a contractual relation. Among the cases so holding are Conrad v. Springfield Con. Ry. Co., 240 Ill. 12, 88 N. E. 180, 130 Am. St. Rep. 251; City of Linton v. Maddox [75 Ind. App. 449], 130 N. E. 810; McGeever v. O'Bryne, 203 Ala. 266, 82 So. 508; Campbell v. Railway Tr. Co., 95 Minn. 375, 104 N. W. 547; Wilkins v. Water & Light Co., 92 Neb. 513, 138 N. W. 754. Other courts regard the distinction, at least in cases not affected by a contractual relation, as purely theoretical, holding that in its practical application to such cases the doctrine of assumption of risk necessarily involves that of contributory negligence. See United Rys. & Elec. Co. v. Riley, 109 Md. 327, 71 A. 970; 18 R. C. L. 673. Still other courts hold that, independently of any contractual relation, there may be a voluntary assumption of the risk of a known danger such as will bar one from recovery for injury to person or property, even though in the exercise of due care. Miner v. Connecticut River R. Co., 153 Mass. 398, 26 N. E. 994; Indiana Nat. Gas Co. v. O'Brien, 160 Ind. 266, 65 N. E. 918, 66 N. E. 742. This court is committed to the latter view. Drown v. New England Tel. & Tel. Co., 80 Vt. 1, 66 A. 801; Lavelle's Adm'r v. Central Vermont Ry. Co., 94 Vt. 80, 108 A. 918.

"It has been observed that few subjects of the law have a more obscure and complicated terminology than that pertaining to the doctrine of assumption of risk. 18 R. C. L. 671. It is believed that much of the confusion to be found in the cases dealing with the question presented here arises from a failure to distinguish carefully the two phases of the doctrine of assumed risk, or to keep in mind the different senses in which the term is used, as to which see Carleton v. Fairbanks & Co., 88 Vt. 537, 549, 93 A. 462. In the primary and narrower sense the doctrine can apply only when a contractual relation exists, ordinarily that of master and servant. But in the broader sense it may apply when no relation by contract exists within the limits of the maxim 'volenti non fit injuria.' If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto."

But a defense based on the maxim, "volenti non fit injuria," is not as broad as the defense of assumption of risk.

"Defendant also contends that the peremptory instruction ought to have been given for the reason that the alleged injury arose out of a risk assumed by plaintiff. As a general rule, the doctrine of assumption of risk pertains to controversies between masters and servants, though circumstances may arise between parties other than masters and servants when the doctrine may apply; but such defense is never available unless it rest upon contract, 'or, if not exclusively on contract, then on an act done so spontaneously by the party against whom the defense is invoked that he was a volunteer, and any bad result of the act must be attributed to an exercise of his free volition, instead of to the conduct of his adversary. * * * The word "assumption" imports a contract, or some kindred act of an unconstrained will. Whenever a man does anything dangerous, he encounters the risk; but it by no means follows that, legally speaking, he assumes the risk.' * * *" Tinkle v. St. Louis & S. F. R. Co., 212 Mo. 445, 110 S. W. 1086, 1093.

In other words, where no contractual relation exists, a person does not necessarily incur the risk, or take chances, simply because he encounters a danger fully known to and appreciated by him. Thus, in Mosheuvel v. District of Columbia, 191 U. S. 247, 24 S. Ct. 57, 48 L. Ed. 170, the plaintiff stepped into an uncovered water box in the sidewalk, the presence and condition of which was fully known to her, and it was contended that she assumed the risk of using the walk and could not recover for her injuries. In answer to this contention the court said:

"We are of the opinion, however, that the rule as thus contended for is unfounded in reason and unsupported by the weight of authority. When analyzed, the proposition comes to this, that no person can, as a matter of law, without assuming all the risk, use the streets of a municipality where he knows of a defect therein, even although it be that, in the exercise of a sound judgment, it might be deemed that with ordinary care and prudence the street could be used with safety. The result of admitting the doctrine would be to hold that all persons in making use of the public streets assumed all risks possibly to arise from every known defect or danger." Page 257 of 191 U. S., 24 S. Ct. 57, 59.

It was therefore held that mere knowledge of the dangerous condition of the street was not alone sufficient to bar a recovery, unless the hazard resulting from its use was so imminent that no reasonably prudent person would have made the attempt. This, we think, is the true test, and is applicable here.

The working place where the appellee was employed at the time of his injury was furnished and maintained by his master, the independent contractor. The appellant was in no wise responsible for its condition or maintenance. It discharged its full duty so long as it refrained from rendering the working place unsafe by any act of its own. This duty was a negative one imposed by law, and not by any contract, express or implied. When, without excuse or justification, the appellant extended this deadly wire into the uncompleted portions of the building where men were at work, it rendered the working place unsafe, thus committing a tort or wrong. As we said in our former opinion, the appellee was not a mere licensee there. He was where he had a lawful right to be in the discharge of his duties to his employer, and the appellant will not be heard to say that it was his duty to quit his employment or disobey the order of his superior, or that he assumed or incurred the risk, or was guilty of contributory negligence, unless the danger was so imminent that no reasonably prudent person would have attempted to remove the scaffolding under existing conditions; and that was a question of fact for the jury.

Counsel places considerable reliance on Southern Ry. Co. v. Edwards (C. C. A.) 44 F.(2d) 526, 527, contending that the court there held that the defense of assumption of risk is applicable between parties other than master and servant. We do not so understand the decision. The action was brought by the administratrix of the estate of a servant of the consignee of a carload of poles, who was killed while attempting to unload the poles from the car. The defendants in the action were the consignor and the carrier. In reversing a judgment for the plaintiff, the court said:

"The condition which gave rise to danger to persons who might undertake the unloading of the car was open and visible, and any danger or risk therefrom to the deceased was one which, as between the deceased and his employer, was assumed by the former."

Inasmuch as the employer of the intestate was not a party to the action, this was but an abstract statement of a correct principle of law. The judgment against the carrier and consignor was, however, reversed on the ground of contributory negligence, not on the ground of assumption of risk; the court doubtless being of opinion that the defense of assumption of risk was not available to the defendants in the action inasmuch as they were not the employers of the intestate.

The appellant further contends that the appellee was guilty of such contributory negligence as would bar a recovery as a matter of law. This is but urging the question we have already considered in a different form. Furthermore, this question was decided adversely to the appellant on the former appeal on substantially the same record.

The remaining assignments are based on the refusal of the court to give a large number of requested instructions and on the charge of the court as given. The requested instructions, the instructions given, and the running comment between the court and counsel for appellant over the exceptions to the charge and the refusal to charge, cover 45 pages of the printed transcript. There are exceptions to the refusal of the court to give each requested instruction, although it is conceded that at least some of the requests were given in substance. There is likewise an exception to each and every instruction given by the court, although some of the instructions given were, in substance, instructions requested by the appellant. It would be wholly unprofitable to attempt to review these numerous exceptions in detail. Suffice it to say that we have given careful consideration to the charge of the court and it seems to cover every material issue in the case, except the question of damages, which is not in issue here. The charge on the questions of negligence and contributory negligence, the principal issues in the case, is free from error, and on the whole the charge was full and fair to all parties concerned.

The judgment of the court below is therefore affirmed.