**UNITED PRODUCTION CORPORATION**
**v. CHESSER et al.**

No. 8431.

Circuit Court of Appeals, Fifth Circuit.

March 28, 1938.

For original opinion, see 94 F.2d 790.

C. M. Hightower, of Houston, Tex., and J. Turner Vance, of Refugio, Tex., for appellant.

Josh H. Groce, of San Antonio, Tex., and J. W. Ragsdale, of Victoria, Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

A motion for rehearing contends that we are wrong in holding that Thornhill knew of the first breaking of the gooseneck in the forenoon before he was killed by the second breaking in the afternoon; and that in saying, "If he did not look to see how the rig was set up for his work he was himself contributorily negligent. If he did look, he assumed the risk of using it as it was," we have imported the law of master and servant into a case where that relationship does not exist.

"Assumption of risk" is a term employed in the law of master and servant to express the implied modification of the master's duty under a contract of employment with reference to furnishing reasonably safe appliances and place of work, which results from the servant's entering on his employment or continuing in it without protest while knowing of an existing unsafety in either. That principle has no application to the present case, since Thornhill was not the servant of United Production Company and himself had no sort of contract with it. In saying that Thornhill, if he saw how the rig was set up, assumed the risk of using it, the word "assume" was used in its ordinary meaning of "take upon oneself," a common use in the discussion of cases of negligence to express the idea that the person injured has voluntarily taken on himself the risk and consequences of a known danger which he could have avoided. In such a situation the maxim volenti non fit injuria is applied. The two uses of the words "assume the risk" are fully discussed in Southern Pacific Co. v. McCready, 9 Cir., 47 F.2d 673. We have not imported the contractual assumption of risk which may occur between a master and servant into to this negligence case.

We persist in our conclusion that Thornhill knew the gooseneck had been broken that forenoon; that he then knew, if he had not known before, that such a thing was to be expected in his work. Thornhill was on duty in the forenoon when the work of perforation was in progress, of which he was in charge. His absence from the scene when the break occurred was temporary. He must have learned of it as soon as he returned. Whoever had fastened the safety chain that morning knew that a break of the gooseneck might occur, and had guarded against it by the manner, unusual with oil drillers, in which he attached the chain. Who was more likely to have had this pre-

522

caution taken than Thornhill? He went with Ferguson to get the new gooseneck, and was present when it was attached. It is testified that the safety chain would have been reattached in any way Thornhill had requested. It seems that no one even knew of a safer way to attach it unless it was Thornhill, for they all say they attached it in the way they thought was usual. It is true that Thornhill was not going to use the gooseneck and the hose in his work, but he was going to use as a hammer the whole drillstem with all that was attached to it. It seems to us under the present evidence that of all persons concerned he best knew the danger, and, if any one was negligent, it must have been himself.

In reversing this case for another trial we of course adjudicate no facts. Further evidence of what Thornhill did or knew may make clearer his part in this tragic occurrence. Motion for rehearing denied.

HUTCHESON, Circuit Judge (concurring).

I concur in overruling the motion for rehearing as I concurred in the original opinion of reversal, because I think now, as I thought then, that the evidence wholly fails to establish that it was negligence to fasten the safety chain to the gooseneck.

The proof is without contradiction that it was usually, indeed uniformly, fastened this way by prudent operators, and the record is completely silent both as to any one having been injured by the breaking of the chain when so fastened, and as to any one before this having thought it necessary, in order to avoid injury to those working on the rig, to fasten it otherwise. The sole purpose of the chain was to prevent the hose from working off of the gooseneck. It had no purpose to prevent the gooseneck from breaking and falling away from the swivel. No one had ever known or heard of a new gooseneck, like the one in question, breaking. What had broken before were old and worn ones. It seems clear to me that no reasonably prudent operator ought to have anticipated that the gooseneck in question would likely break, and cause injury, and therefore that it may not reasonably be found that fastening the hose to the gooseneck was negligence.

If, however, I am wrong in this, and, as my associates believe, a jury might have found that it was negligence not to fasten the chain to the swivel, I entirely agree with them that of all persons concerned Thorn-

hill best knew the danger, and, if there was negligence in regard to the method of its fastening, Thornhill knew it and assented *to it.*